[Crim. No. 43279. Second Dist., Div. Seven. Mar. 9, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ERIC MARK LEVINE, Defendant and Appellant.

**COUNSEL**

John A. Colucci for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Mark Alan Hart and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MERRICK, J.*—**

### RECORD

This is an appeal by the defendant following the entry of a plea of guilty to count I, a violation of section 11378 of the Health and Safety Code upon a negotiated plea bargain wherein counts II and III of the original information were dismissed. Defendant argues that the trial court erred in failing to quash the search warrant, and further, that the trial court erred in ordering an *in camera* hearing outside the presence of defendant and his trial counsel. We find no merit to either argument and therefore affirm the judgment of the trial court.

*Assigned by the Chairperson of the Judicial Council.

## FACTS

Between September 18 and 22, 1981, Officer Shane S. Talbot of the Santa Monica Police Department was contacted by a "confidential informant" who told him that he or she had information about a male known as "Eric" who was dealing cocaine in gram quantities and that he was dealing out of his apartment located on the third floor of 1720 Pacific Avenue in the City of Venice, having a phone number of 399-3065.

Thereafter, in Officer Talbot's presence and hearing, the confidential informant dialed the 399-3065 telephone number and contacted a subject who identified himself as "Eric." The confidential informant inquired as to the price of a gram of cocaine, and "Eric" responded by quoting a price and indicated there would be no problem with availability. (This telephone conversation was taped by Officer Talbot and is the subject matter of defendant's second contention re the *in camera* hearing conducted by the trial judge.)

Immediately following the telephone call, Officer Talbot contacted General Telephone security and verified that the phone number 399-3065 was listed in the name of Mark Levine at 1720 Pacific Avenue, apartment 333, in the City of Venice. Officer Talbot then went to the 1720 Pacific Avenue address and found it to be as the confidential informant described it to be, and found that the apartment register showed a "Levine" at apartment 333.

Officer Talbot then examined the confidential informant regarding the appearance, packaging, price and use of cocaine and formed the opinion that the confidential informant knew what cocaine looked like and the manner in which it was sold and packaged.

All of the foregoing was incorporated in "Observations of Affiant—Attachment One" of Officer Talbot's affidavit for search warrant presented to the magistrate. The magistrate issued a search warrant commanding the search of apartment #333 and the person of " 'Eric,' [*sic*] a male white 25-30 5'8"-5'10", med. build. Blnd/blue having a mustache."

When the search warrant was executed, police officers found 928 Quaaludes, 180 grams of marijuana, 9.7 grams of powder containing cocaine, plus 28 one-gram glass vials, a hand grinder, a plastic funnel and two razor blades. Defendant was arrested and charged with violations of Health and Safety Code sections 11378 (possession of methaqualone for sale), 11351 (possession of cocaine for sale) and. 11359 (possession of marijuana for sale).

I. *Should the Search Warrant Be Quashed Because of the Inadequacy of the Supporting Affidavit?*

An examination of the search warrant and the supporting affidavit would tend to bear out the on-the-record appraisal of the trial judge that, "[t]his is not what you would call a classic affidavit and search warrant to give to a police recruit class." The "Observations of Affiant—Attachment One" are compacted into less than a page-and-one-half of double-spaced type-written and handwritten statements in support of issuance of the requested search warrant.

Obviously, Officer Talbot had no illusions of winning a Pulitzer prize for his authorship, but rather was trying, however succinctly, to convey to the magistrate the existence of sufficient probable cause. Based on the content of the affidavit, a magistrate issued a search warrant. It survived a motion to quash at the preliminary hearing. And the trial judge denied a further motion to quash in the superior court. ■ We now deign to join this judicial triumvirate and find that the affidavit was sufficient to establish probable cause and that the trial judge was correct in denying the motion to quash.

■ In making that determination we are governed by the same standard as the trial court in reviewing a ruling on a motion to suppress evidence based upon a defendant's contention the evidence was seized under a search warrant issued without probable cause. The warrant is properly set aside only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause. (*People v. Reagan* (1982) 128 Cal.App.3d 92 [180 Cal.Rptr. 85].)

■ "Probable cause requires facts which are sufficient to lead a man of ordinary caution and prudence to believe and conscientiously to entertain a strong suspicion that there is property subject to seizure in the location for which the warrant is sought." (*Caligari v. Superior Court* (1979) 98 Cal.App.3d 725, 729 [159 Cal.Rptr. 534]; *People v. Superior Court (Brown)* (1975) 49 Cal.App.3d 160, 165 [122 Cal.Rptr. 459]; *People v. Stout* (1967) 66 Cal.2d 184, 192-193 [57 Cal.Rptr. 152, 424 P.2d 704]; *Skelton v. Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485].)

■ 1. The affidavit alleged the following: "Between 9-18-81, and 9-22-81 your affiant was contacted by a confidential informant who told your affiant [that] he/she had information about a male known only as Eric [*sic*] that was presently dealing cocaine in gram quantities and that he was dealing

out of his apartment located on the third floor of 1720 Pacific Ave. in the City of Venice, having a home phone number of 399-3065."

Acting on this bare-bones information, Affiant/Officer Talbot alleges further: "Having received this information from the C.I., your affiant then had the C.I. make telephone contact with subject Eric [*sic*]. The call was made between 9-18-81, and 9-22-81, and the phone number dialed as 399-3065 as your affiant witnessed the number that was dailed [*sic*]. The C.I. made contact on the phone with a subject who I.D. himself as Eric [*sic*]. The C.I. then inquired as to the price of a gram of cocaine, and Eric [*sic*] responded with a price, and indicated that there would be no problem with the availably [*sic*].

"Your affiant then contacted General Telephone Security and gave them the number 399-3065, which returned in the name of Mark Levine at 1720 Pacific Ave. Apt. 333 in the City of Venice.

"Your affiant then went to 1720 Pacific Ave. and found it to be as the C.I. described it to be, and found that the apt. register showed a Levine for apt. 333.

"Your affiant again asked the C.I. if he/she had any other information about Eric [*sic*] other than discription [*sic*] and he/she said no.

"Your affiant has examined and questioned the C.I. regarding the appearance, packaging, price and use of cocaine and has formed the opinion that the C.I. knows what cocaine looks like and the manner in which it is sold, and packaged.

"Your affiant believes the C.I. to be reliable for the following reasons: The C.I. gave your affiant information regarding drugs which was corroborated by a phone call.

"Your affiant requests that the identity of the C.I. remain confidential for the following reasons: Disclosure of the C.I.'s identity would endanger the safety and well being of the C.I., and would destroy the C.I.'s future usefulness to law enforcement in detecting criminal activity."

The affidavit concludes with the following handwritten statement: "Affiant had taped the C.I.-Eric telephone conversation and played it back after the conversation in the presence of affiant and the C.I."

Officer Talbot tabs his informant as a "Confidential Informer" but supplies no data as to whether or not he has informed in the past. He does wish

to protect his confidentiality, however, for future usefulness. ■ In the absence of any proof of having given reliable information in the past with regard to criminal activity, then the information presently given must be corroborated, in order to establish the credibility of this informant.

■ "It is, of course, possible for an informant's bare conclusion to be buttressed by secondary information, which itself does not amount to probable cause but which fortifies the first, and for the two in combination to provide sufficient cause for the issuance of a search warrant." (*People v. West* (1965) 237 Cal.App.2d 801, 807 [47 Cal.Rptr. 341].)

■ Corroboration is not limited to a given form but includes within its ambit any facts, sources, and circumstances which reasonably tend to offer independent support for information claimed to be true. In a police investigation the information given by informants, even where the informant's reliability is not complete, can nevertheless be sufficient to establish the requisite probable cause if it is corroborated in essential respects by other facts, sources or circumstances. (*People v. Fein* (1971) 4 Cal.3d 747 [94 Cal.Rptr. 607, 484 P.2d 583].) Not only may the information in a search warrant affidavit which has been supplied by an informant be corroborated by investigation conducted by law enforcement officials (*People v. Benjamin* (1969) 71 Cal.2d 296, 301-302 [78 Cal.Rptr. 510, 455 P.2d 438]), but also this corroboration need only give the officers reasonable grounds to believe that the informant is truthful (*People v. Lara* (1967) 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202]).

*People v. Kershaw* (1983) 147 Cal.App.3d 750, 758-759 [195 Cal.Rptr. 311], decided by this division, in discussing corroboration of an anonymous tip, citing *People v. Magana* (1979) 95 Cal.App.3d 453, 463 [157 Cal.Rptr. 173]; *People v. Fein, supra,* 4 Cal.3d 747, 753; and *People v. Caron* (1981) 115 Cal.App.3d 236 [171 Cal.Rptr. 203], observed: "Information from an untested informant may be sufficient to constitute probable cause for a search if it is corroborated by facts pertaining to the defendant's alleged criminal activity. [Citations.] Such corroboration does not require a firsthand observation of the defendant selling cocaine. Narcotics offenses are crimes which are usually committed in the presence only of the seller and the buyer. The requirement stated in *Fein* is that for corroboration to be adequate it must 'pertain' to defendant's alleged criminal activity. This requirement is met if police investigation has uncovered probative indications of criminal activity along the lines suggested by the informant."

■ In the case at bar, the somewhat sketchy and brief information supplied by the confidential informant was nevertheless factual and within the personal knowledge of the informant. To the seven-year veteran nar-

cotics officer, whose affidavit indicated involvement in many narcotics arrests and testimony as an expert in both municipal and superior courts as to drug usage, this information pointed to ongoing narcotic activity, i.e., selling of cocaine, by someone named "Eric" at his residence at 1720 Pacific Avenue, apartment 333, in the City of Venice.

How to corroborate this information and verify the credibility of his informant? Officer Talbot had the confidential informant, in his presence, dial the 399-3065 telephone number and heard him talk to a subject who identified himself as "Eric." The confidential informant inquired as to the price of a gram of cocaine, and "Eric" responded by quoting a price and indicated there would be no problem with availability. Officer Talbot taped this phone conversation and, as indicated, in his search warrant affidavit, played it back in the presence of the informant. Continuing his investigation, Officer Talbot contacted General Telephone security and verified that the phone number 399-3065 was listed in the name of "Mark Levine" at 1720 Pacific Avenue, apartment 333, in the City of Venice.

(Defendant attacks the corroborative significance of Officer Talbot's investigation by noting that the name of the suspect "Eric" differs from that of the person listed for the phone number given. However, defendant overlooks the fact that the person contacted at the phone number identified himself as "Eric" and the address given matched that of the address listed for the phone number. We hold that the confidential informant was truthful and reliable and that "Eric" was either using a different name for the purpose of selling cocaine, or more than one person was living at that address. We note, too, for the purpose of this appellate review that the true name of defendant is "ERIC Mark Levine" as elicited by the magistrate at the outset of the preliminary hearing and also by the trial judge at the commencement of proceedings in superior court, as established by the record on appeal.)

The diligent officer then went to the 1720 Pacific Avenue address and found it to be as the confidential informant described it to be, and found that the apartment register showed a "Levine" at apartment 333.

Rounding out his investigation, Officer Talbot then examined the confidential informant regarding the appearance, packaging, price and use of cocaine and formed the opinion that the confidential informant knew what cocaine looked like and the manner in which it is sold and packaged.

Defendant argues that the affidavit failed to corroborate the informant's information; that it was couched in vague, ambiguous and conclusionary phrases and failed to establish probable cause. ■ We disagree and feel compelled to include with this opinion the oft-quoted observations of the

United States Supreme court in *United States* v. *Ventresca* (1965) 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741]: "[A]ffidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. . . . Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

While the instruments in question would not probably serve as blueprints for a model affidavit and search warrant, we hold, nevertheless, they were adequate, and that the totality of the supplemental investigatory information and data accumulated by Officer Talbot buttressed the information initially supplied by the confidential informant and is more than sufficient to corroborate that information and to establish probable cause.

The trial court did not err in failing to quash the search warrant.

II. *Did the Trial Court Err in Ordering an In Camera Hearing Outside the Presence of Defendant and Trial Counsel?*

Defendant filed a discovery motion to compel the prosecution to make available for examination, copying or hearing, the tape recording made of the conversation between the confidential informant and the subject known as "Eric" as set forth in the affidavit in support of the search warrant discussed above. Defendant also filed a motion under 1538.5 of the Penal Code to suppress evidence, and in the alternative, to quash and traverse the search warrant.

On April 27, 1982, the court heard argument regarding the disclosure of the tape contents. Defendant also argued that the contents of the conversation were vital to the traverse motion, requested only a transcript and indicated that he was not seeking to discover the identity of the informant, but merely the substance of the conversation.

The People opposed disclosure of the tape on the grounds that it would reveal the identity of the confidential informant and that they had already determined that the informant could provide no further information to assist the defense, in that he/she had never been in the apartment, but merely had information.

The court opined that a divulgement of the entire contents of the conversation would have a "great tendency to reveal the identity of the infor-

mant." The trial court, on its own motion, ordered an *in camera* hearing of the tape recording, indicating that "if it appears that there is anything in there that is different from the warrant or would be helpful to the defense with respect to traversing the warrant or in trial, then we'll get on to the question of whether there should be divulgement or not."

The prosecutor indicated to the court that the "Affiant was in court today with the tape recording and the player." To the court's further inquiry it was indicated the taped conversation was "approximately five minutes." The record then reflects the trial judge stated: "All right. As soon as we finish the calendar call, I'll hear it in chambers." Prior to the *in camera* hearing, the court heard argument on defendant's motion to quash the search warrant and then denied the motion to quash.

The trial judge then retired to chambers and listened to the tape recording *in camera.* The record is not quite clear as to who was present, but at least a court reporter was there to transcribe the proceedings. The defendant and his counsel were excluded. At the conclusion of the *in camera* hearing in chambers, the trial judge returned to the courtroom and made his ruling in open court: "Now having listened to the tape recording, Mr. Warner, there is no question in this Court's mind that allowing the defense to hear the tape or to receive a transcript of it would reveal the identity of the informant. There is nothing in that transcript—that tape beyond what is in the affidavit. Of course, it's more lengthy and extensive and there is personal conversation as well, but there is nothing that has been omitted from the affidavit which would tend to impeach the material used as a basis for the search warrant, nor is there anything in that recording that would tend to be of assistance to the defendant with respect to litigating the issue of his guilt or innocence. So your request for the discovery by way of listening to the tape or having a transcript of it is denied."

Defendant's contentions on appeal have two basic thrusts: *First*: Holding of the ex parte *in camera* hearing outside the presence of defendant and his attorney deprived defendant of his constitutional rights to public trial, compulsory attendance of witnesses, to be present and have effective aid of counsel, to confront and cross-examine witnesses and denied him due process of law. *Second*: Trial court erred in ordering on its own motion the *in camera* hearing pursuant to sections 1041 and 1042, subdivision (d) of the Evidence Code.[1]

---

[1]Evidence Code section 1041: "(a) Except as provided in this section, a public entity has a privilege to refuse to disclose the identity of a person who has furnished information as provided in subdivision (b) purporting to disclose a violation of a law of the United States or of this state or a public entity in this state, and to prevent another from disclosing such

*First*: The Use of an *In Camera* Hearing Did Not Violate Defendant's Constitutional and Statutory Rights.

The United States Supreme Court has upheld the prosecution's privilege to withhold disclosure of an informant's identity. In *Roviaro* v. *United States* (1957) 353 U.S. 53, 59 [1 L.Ed.2d 639, 644, 77 S.Ct. 623], the court stated: "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." The court further stated (at p. 62 [1 L.Ed.2d at p. 646]): "We believe that no fixed rule with respect

---

identity, if the privilege is claimed by a person authorized by the public entity to do so and:

"(1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or

"(2) Disclosure of the identity of the informer is against the public interest because there is a necessity for preserving the confidentiality of his identity that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the identity of the informer be disclosed in the proceeding. In determining whether disclosure of the identity of the informer is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered.

"(b) This section applies only if the information is furnished in confidence by the informer to:

"(1) A law enforcement officer;

"(2) A representative of an administrative agency charged with the administration or enforcement of the law alleged to be violated; or

"(3) Any person for the purpose of transmittal to a person listed in paragraph (1) or (2).

"(c) There is no privilege under this section to prevent the informer from disclosing his identity."

Evidence Code section 1042, subdivision (d): "(d) When, in any such criminal proceeding, a party demands disclosure of the identity of the informant on the ground the informant is a material witness on the issue of guilt, the court shall conduct a hearing at which all parties may present evidence on the issue of disclosure. Such hearing shall be conducted outside the presence of the jury, if any. During the hearing, if the privilege provided for in Section 1041 is claimed by a person authorized to do so or if a person who is authorized to claim such privilege refuses to answer any question on the ground that the answer would tend to disclose the identity of the informant, the prosecuting attorney may request that the court hold an in camera hearing. If such a request is made, the court shall hold such a hearing outside the presence of the defendant and his counsel. At the in camera hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial. A reporter shall be present at the in camera hearing. Any transcription of the proceedings at the in camera hearing, as well as any physical evidence presented at the hearing, shall be ordered sealed by the court, and only a court may have access to its contents. The court shall not order disclosure, nor strike the testimony of the witness who invokes the privilege, nor dismiss the criminal proceeding, if the party offering the witness refuses to disclose the identity of the informant, unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial." (Italics omitted.)

to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

This common law privilege, upheld by the United States Supreme Court in *Roviaro* v. *United States, supra,* 353 U.S. 53, was codified in California in 1969 when section 1042, subdivision (d) of the Evidence Code was enacted. Attacks then were leveled at the constitutionality of that section. In *People* v. *Pacheco* (1972) 27 Cal.App.3d 70, 81 [103 Cal.Rptr. 583], the court held that "While as a general rule the Sixth Amendment guarantees a defendant the right to compel the attendance of witnesses chosen by him (*United States* v. *Davenport* (7th Cir. 1963) 312 F.2d 303, 305), it does not necessarily follow that a defendant has the right to compel the prosecution to disclose the name of the informer." Further, the court stated: "It is the invocation of the basic privilege that denies the informer's name to the defendant, not the *in camera* hearing, which is only the method by which the court determines the applicability of the privilege. If the Sixth Amendment were to apply, it would deny the privilege, the right to which has been determined to be valid." (*Id.,* at p. 82.)

Furthermore, it is noted that the *in camera* hearing is only one phase of a more extended, adversary hearing (*People* v. *Pacheco, supra,* 27 Cal.App.3d 70, 82; *People* v. *Superior Court (Biggs)* (1971) 19 Cal.App.3d 522, 531, fn. 14 [97 Cal.Rptr. 118]), and that a record of the *in camera* proceedings is maintained in order that a defendant who assails an unfavorable ruling may obtain appellate review of the proceedings. Section 1042, subdivision (d) requires that the judge is to consider both the evidence at the open court hearing and that at the *in camera* hearing in determining whether nondisclosure of the informant's identity would deprive defendant of a fair trial.

While some defense critics have been distrustful of any unilateral determination of materiality reached without participation by defense counsel, and have been critical of placing an additional burden of judicial investigation upon the trial judge, the United States Supreme Court in *Taglianetti* v. *United States* (1969) 394 U.S. 316, 317-318 [22 L.Ed.2d 302, 305, 89 S.Ct. 1099] held: "[W]e cannot hold that 'the task is too complex, and the margin for error too great, to rely wholly on the *in camera* judgment of the trial court.'"

Pursuant to section 1042, subdivision (d) of the Evidence Code, the trial judge conducted an *in camera* hearing in his chambers and listened to the

tape recording. The proceedings were reported, the reporter's transcript was sealed and together with a copy of the tape recording transmitted to this court. We have listened to the tape, admittedly of poor quality but nevertheless understandable, and have read the transcript. The whole record supports the ruling of the trial court set forth above in its entirety. There was no error.

Appellate counsel renews the request of trial counsel that the tape be disclosed on appeal. We refuse to enlarge the defendant's "fishing expedition" to discover the identity of the informer, by allowing him now to cast his discovery net into "appellate waters" and thereby circumvent the statutory privilege protection of sections 1041 and the application thereof determined in an ex parte *in camera* hearing under 1042, subdivision (d) of the Evidence Code. The trial judge conducted such a statutory hearing and made his ruling. We have found no error in that ruling. We deny appellate counsel's request.

*Second*: The Trial Court Erred in Ordering on *Its Own Motion* the *In Camera* Hearing Pursuant to Sections 1041 and 1042, Subdivision (d) of the Evidence Code.

■ Section 1042, subdivision (d) of the Evidence Code provides that when a defendant demands disclosure of the identity of an informant on the ground he is a material witness on the issue of guilt, the court shall conduct an adversary hearing on the issue of disclosure. During such hearing, if the privilege under section 1041 is claimed, "the prosecuting attorney may request that the court hold an in camera hearing. If such a request is made, the court *shall* hold such a hearing outside the presence of the defendant and his counsel." (Italics added.)

While defendant's trial counsel utilized a discovery motion with respect to obtaining a transcript of the telephone conversation or an opportunity to listen to the tape, the trial court treated the motion as one for "disclosure" of the informant, and the prosecutor interposed the privilege of nondisclosure of the informant as provided by Evidence Code section 1041.

It is true the record does not disclose any "request" by the prosecutor for an *in camera* hearing. It is elementary, however, that the only way the trial judge could perform his task of judicial investigation was to hold an *in camera* hearing consistent with the statutory procedures laid out in Evidence Code section 1042, subdivision (d). The record reflects that the trial judge substantially followed the procedure set out in Evidence Code section 1042, subdivision (d): holding an *in camera* hearing in his chambers at which he listened to a playing of the tape recording in question with a court reporter

present; the transcript and a copy of the tape recording were prepared, sealed and delivered to the clerk of the court; following the hearing the trial judge then made his ruling in open court.

While the trial judge's decision to initiate an immediate *in camera* hearing was unsolicited by the prosecutor, rather than censure, the trial judge should be complimented for a judicious use of court time and personnel to effect a prompt hearing reasonably within the statutory guidelines for such hearings. Defendant has not shown, nor can we discern, that any prejudice has resulted from this *sua sponte* action by the trial judge.

Judgment of the trial court is affirmed.

Johnson, Acting P. J., and Thompson, J., concurred.

A petition for a rehearing was denied April 4, 1984, and appellant's petition for a hearing by the Supreme Court was denied May 24, 1984.