Filed 1/17/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHERONE BRADLEY,<br><br>    Defendant and Appellant. | C075294<br><br>(Super. Ct. No. 12F01760) |

APPEAL from a judgment of the Superior Court of Sacramento County, Peter N. Mering, Judge.  (Retired judge of the Sacramento Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

C. Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Kevin L. Quade, Deputy Attorneys General, for Plaintiff and Respondent.

When arrested by law enforcement, defendant Sherone Bradley, an admitted felon, possessed a firearm he admitted possessing before and during the charged offense.

Convicted of being a felon in possession of a firearm, he contends the trial court abused its discretion and denied him his constitutional rights when it denied his motion for disclosure of a confidential informant whom defendant claimed entrapped him, and when it sustained a government agent's invocation of the privilege not to testify regarding the informant. We conclude the trial court did not err. Any error, if there was one, was harmless under any standard of prejudicial error, and we affirm.

FACTS

Erik Crowder is a special agent for the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). In 2011, he set up a tobacco wholesale business in a warehouse as part of an undercover investigation into outlaw motorcycle gangs. On June 22, 2011, Agent Crowder held a barbeque at the warehouse. Some of the invitees were members of the Ching A Lings, an organized motorcycle club. The atmosphere was relaxed and jovial. People were eating and drinking, laughing and joking. Nevertheless, Crowder had "safety features" in place to protect him from the people attending the barbeque.

Defendant's father, James Bradley, brought defendant to the barbeque. Agent Crowder knew James from their association in the Wheels of Soul, a different motorcycle club, but this was the first time he had met defendant. The parties stipulated defendant had previously been convicted of a felony.

Defendant appeared to be comfortable and was enjoying himself at the barbeque. Agent Crowder saw him smoking marijuana at one point. Defendant did not talk about being fearful, and he did not mention he knew Crowder was working as an undercover agent.

Towards the end of the barbeque, defendant removed a handgun from his waistband or pocket and showed it to Agent Crowder. It was a small .22-caliber revolver. Crowder memorized the gun's serial number and recorded it in his report—L121277.

Defendant and his father laughed as they told Agent Crowder of a prior incident when defendant, then on parole, possessed the gun while stopped by law enforcement. The officers performed a patdown search on defendant, but they missed the small gun, which was tucked behind his waistband. Defendant put his hands up in the air to show Crowder how the officers missed the gun during the patdown. Defendant seemed to boast over the incident. He showed Crowder documentation attesting he was no longer on parole, and thus no longer subject to search conditions. Crowder made audio and video recordings of this conversation, and they were played for the jury.

At no time did defendant tell Crowder he possessed the gun at the barbeque to protect himself or his father, or that he was fearful for his and his father's safety.

Four months later, Walnut Creek police searched defendant's car. They recovered a silver, five-shot revolver bearing the serial number L121277.

Defendant testified on his own behalf. His defense was that a confidential informant at the barbeque entrapped him to possess the firearm. In summary, defendant testified his life and the lives of his father, Agent Crowder (whom he knew as "Repo"), and that of his father's friend who went by the name of "Beast" were in danger because they had all left the Wheels of Soul club. Prior to the barbecue, defendant became aware that Repo was an undercover police officer and Beast was an informant. Defendant stated Beast urged him to bring the gun to the barbeque to provide security for himself and his father due to threats from Wheels of Soul members. Defendant showed Repo the gun at the barbeque so Repo knew defendant had his back. Beast was at the barbeque and was around the general area when defendant showed Repo the gun. We describe defendant's testimony in detail below.

At the close of defendant's case, the parties stipulated "there was, in fact, a confidential informant involved in this case."

A jury convicted defendant of being a felon in possession of a firearm. (Pen. Code, former § 12021, subd. (a)(1).) Defendant also admitted serving a prior prison term

3

for purposes of Penal Code section 667.5, subdivision (b). The trial court imposed a state prison term totaling three years, calculated as follows: the midterm of two years for the unlawful possession, plus a consecutive one year for the prior prison term enhancement.

DISCUSSION

This appeal challenges the trial court's denial of defendant's attempts to obtain Beast's identity and establish Beast was a government informant who entrapped defendant to possess the firearm. Defendant contends the court abused its discretion and violated his constitutional rights by (1) denying his motion to disclose Beast's identity; and (2) sustaining Agent Crowder's invocation at trial of a privilege under Evidence Code sections 1040 and 1041 not to disclose official information and information about confidential informants.[1] Defendant also initially contends the court erred in applying section 1041's nondisclosure privilege because Beast was not an informer within the meaning of that statute.

We conclude (1) Beast was an informer for purposes of section 1041; (2) the trial court did not abuse its discretion by not permitting disclosure of Beast's identity and sustaining Agent Crowder's invocation of privilege; and (3) if the court erred, the error was harmless.

A.    *Background information*

Before trial, defendant filed a motion to disclose the confidential informant's identity, or, in the alternative, to dismiss the action. Defendant alleged the confidential informant, referenced in the motion as CI3123, attended Agent Crowder's barbeque and was seen in the video of the event. Defendant argued the informant was a material witness because he had a sufficiently close vantage point from which he could have

---

[1]    Undesignated references to sections are to the Evidence Code.

4

viewed the crime, and he could have been able to provide evidentiary support for defendant's affirmative defense of entrapment.

Supporting the motion, defendant testified in a declaration he, his father (James), Agent Crowder, and the informant were once members of the Wheels of Soul Motorcycle Club. James was the club's president, and the informant was its sergeant at arms, who was responsible for James's security. Defendant knew the informant and considered him a family friend. The informant asked defendant to watch the door during club meetings to ensure no one entered uninvited.

Defendant, James, Agent Crowder, and the informant left the Wheels of Soul because club members threatened the informant when he refused to conduct a hit on another member. Members also threatened the informant and James with death for leaving the club, and they labeled the two as snitches. Defendant heard his father and the informant talk about the threats. Because defendant left the club under similar circumstances, he believed he, his father, and the informant were in grave danger.

Later, James, the informant, and Agent Crowder joined the Ching A Ling motorcycle club. Defendant joined at James's and the informant's urging. Defendant testified that about one week prior to Agent Crowder's barbeque, the informant personally urged him to arm himself at a Ching A Ling club meeting, and he offered him a firearm to do so. The informant counseled defendant to arm himself for all Ching A Ling meetings due to the Wheels of Soul threats. The informant believed he and James were targets.

Defendant took the informant's warnings seriously. He knew James feared attending the barbeque, and he feared going as well. He remembered the informant's caution right before the barbeque. At the time of the barbeque, defendant did not know Agent Crowder had a security detail protecting the event.

At the hearing on defendant's motion, the court asked to hear from Agent Crowder about whether the person defendant claimed was an informant truly was an informant,

5

and what instructions, if any, Crowder gave to him for the barbeque. However, when defense counsel asked Crowder whether he worked with informant CI31213, Crowder invoked his privilege not to testify under sections 1040 and 1041. The court then convened an in camera hearing and examined Crowder. The court ordered the transcripts of the in camera hearing sealed. Following the in camera hearing, the court announced it was not prepared to disclose the confidential informant's identity.

The following day, the court stated it was considering changing its mind. The court asked the prosecution if it did not order the informant's identity to be disclosed, if defendant already knew the informant's real name, and if defendant testified at trial that the informant urged defendant to bring a gun to the barbeque, could the court preclude defendant from establishing the informant was in fact an informant for Agent Crowder. The prosecutor said no, and the court agreed with him. The prosecutor said the defendant could testify as he saw fit, but the People were asking the defendant not to identify the informant by name or indicate he was a confidential informant. The court, however, noted the entrapment defense evaporates without some evidence the person entrapping the defendant was connected to law enforcement. The prosecution agreed, but it had no suggestion on how to move forward.

Defense counsel argued the informant was a material witness. The informant was in a position to have been a witness of the alleged crime. He also could have seen Agent Crowder, whose sobriety at the event, counsel claimed, was questioned at defendant's preliminary hearing.[2] Counsel stated defendant had a name associated with the informant, but he did not know whether that name was the informant's true name or an assumed name for his role as a federal undercover informant. Also, defendant did not

---

[2] At the preliminary hearing, defense counsel asked Agent Crowder: "Had you consumed any alcohol that day?" Crowder responded: "I don't recall if I had or hadn't. I would have to double-check." There was no further questioning on the issue.

have the informant's contact information, so he had no way to contact the informant or, we presume, subpoena him. Counsel argued that without disclosure, defendant was denied a fair trial due to lack of access to a percipient witness and the witness's observations of the prosecution's main witness.

In response, the prosecution argued defendant had not met his burden to justify disclosure of the informant's identity. The prosecution claimed defendant's due process rights could be protected without disclosure, as defendant could call another percipient witness to testify—his father.

After studying authorities, the court announced it was now inclined to require the prosecution to disclose the informant's identity. It reasoned defendant's assertion that the informant encouraged defendant to bring a firearm to the barbeque made the informant a material witness whose testimony created a reasonable probability of exonerating the defendant due to entrapment.

In response, the prosecutor asked to cross-examine defendant on the contents of his declaration. He also informed the court he intended to continue the matter pursuant to section 1042, subdivision (d), to allow the confidential informant to testify in an in camera hearing in order for the court to determine whether the informant was a material witness. The court allowed the prosecution to cross-examine defendant, and it set a hearing to hear the informant.

Under cross-examination, defendant testified he left the Wheels of Soul club after club members threatened the informant, whom he referred to as "Beast," for not performing a hit on someone.[3] The club members called Beast and defendant's father,

_____

[3]    It is obvious defendant knew Beast by a formal name. During his testimony, defendant referred to the informant using the informant's first name, last name, both names, and his gang moniker, "Beast." We will refer to him interchangeably as Beast or the informant.

7

James, snitches for leaving the club and they threatened them. Defendant first met Agent Crowder, whom he referred to as "Repo," at Crowder's barbeque. Defendant stated he saw no members of the Wheels of Soul club at Crowder's barbeque, and no one told him there were, or possibly could be, Wheels of Soul affiliates there. However, at a prior Ching A Ling meeting, Beast asked the club members to let defendant hold a gun and stand at the door to make sure no one intruded. A member set a gun on the table in front of defendant.

Defendant stated he thought Beast or his father, or both men (it is difficult to determine from the transcript) were in fact informants when he left Wheels of Soul. He did not care, though, because Beast was his father's best friend. If Beast was a snitch, and defendant's father was on his side, defendant thought there had to be a good reason.

On the day of the barbeque, James arrived at defendant's house and asked him to go to the barbeque with him. Defendant took the gun with him because he felt James, Beast, and he were in danger. He showed the gun to Repo at the barbeque to let him know he had a gun.

Some months after this hearing, the court convened an in camera hearing to hear testimony from the informant. The hearing had been continued three times; the first because the informant was unavailable, the second because the informant's "handler" with the ATF said it would be impossible for the informant to attend court on that day, and the third because the informant was unable to make it to Sacramento and would try to get a flight for the following day, which he did.

Following the in camera hearing, the court announced it would deny defendant's motion and not disclose the informant's identity. It stated the evidence showed the informant was in fact a confidential informant for Agent Crowder at the barbeque. However, the informant's testimony about what he observed and heard at the barbeque would not assist the defense. As a result, section 1042 did not require disclosure.

8

Over the next few days, the parties continued discussing how defendant, if he testified he was entrapped by someone he believed was an informant, could establish his entrapment defense even though he could not produce the informant, a logical witness the jury would expect defendant to produce to support his testimony. The court was convinced defendant was entitled to present some explanation of why he was not calling the informant, who would be vital to his case. At a minimum, the court agreed to explain entrapment to the potential jurors during voir dire and learn whether they were able to apply the defense if the facts warranted.

The court and the parties continued their discussion prior to the prosecution commencing its case. Defendant sought some kind of naming convention by which he could match up his testimony with the informant's role. The prosecutor agreed defendant was entitled to establish there was a confidential informant at the barbeque, and he offered to stipulate to that fact. However, he refused to stipulate to anything regarding the informant's identity or defendant's likely testimony regarding his interactions with the informant. Defendant argued the stipulation still would not allow him to establish that the informant, with whom defendant and his father had a personal relationship, was in fact a government agent, particularly when the prosecution would argue defendant's testimony was untrue.

The court determined the prosecution's stipulation would be adequate. Defendant remained free to identify and describe the person he believed was the confidential informant without using the informant's actual name, and to establish his relationship and history with him and his knowledge that he was an official with a motorcycle club. The court also believed this situation protected defendant because he would not be subject to rebuttal testimony by the informant disputing his testimony, and he could point out the prosecution did not call the informant as a witness.

The case proceeded to trial. Agent Crowder testified as described above, and while cross-examined, he invoked his privilege not to testify under section 1040

9

numerous times. In general, he invoked the privilege when asked about his use of informants or about anything that could lead to identifying any informant or investigatory tactics used in this matter.

Defendant testified at trial similarly to his pretrial cross-examination testimony. In pertinent part, defendant stated Wheels of Soul members threatened James and Beast after they left the club. Defendant stated he saw an Internet post identifying Beast as an informant and Repo as an undercover cop. Defendant claimed he knew Beast was an informant, and he suspected his father was an informant. He did not care, however, because he was close with both men.

Defendant said Beast asked him to join the Ching a Lings. Defendant first wanted to attend a club meeting and see what the members were like. Beast expressed concern about defendant's safety at the meeting because defendant was not a member, so he gave defendant a gun and told him to watch the door and make sure no Wheels of Soul members entered. Defendant told Beast he did not know how to use it. Beast told him all he had to do was fire. Defendant gave the gun back to Beast when the meeting ended.

Before the barbeque, defendant heard a lot about Repo. Defendant claimed he knew Repo was an undercover cop. No one told him how to act around Repo, but Beast was acting funny around Repo for some reason.

Defendant testified Beast contacted him and told him to bring a gun to the barbeque because of the threats from the Wheels of Soul. At the barbeque, defendant retrieved a small gun from the glove compartment in his father's car and took it with him inside. He showed the gun to Repo so Repo could feel comfortable and know defendant had his back. He felt comfortable showing the gun to Repo even though he knew Repo was an undercover cop.

Defendant also showed Repo his parole discharge card. He showed Repo the card so he would not have to worry about being searched. Beast had encouraged defendant to trust Repo because Repo left Wheels of Soul with defendant's father.

10

Towards the end of his testimony, defendant identified Beast and Repo in a photograph. The photo was not displayed to the jurors.

On cross-examination, defendant admitted he carried the gun on several other occasions. He knew it was illegal for him to carry a firearm.

After defendant closed his case, the parties took up the issue of the proposed stipulation. With the jury present, the court stated: "And as I understand the stipulation is that, in fact, there was a confidential informant involved in this investigation who has not been identified and will not be identified by the ATF or any of the witnesses we've had, other than the defendant's testimony about the person he knows as Beast." Defense counsel objected and, outside the jury's presence, argued the stipulation denied him a fair trial because it did not inform the jury that Beast was in fact the informant in this case. The trial court stated it would not agree to a stipulation that informed the jury of Beast's identity as an informant. Prior to instructing on the law, the court informed the jury the People and the defense stipulated "there was, in fact, a confidential informant involved in this case." The court stated the stipulation "does not go beyond as basic as [I] have stated."

After the verdict, the trial court explained to the jury how unique it was to have a case where a confidential informant could have been a material witness. The court described the need to protect informants' identities and the process it went through to determine whether to disclose the informant's identity. The court stated the informant was, "in fact the gentlemen referred to by the defendant." The court summarized the informant's testimony from the in camera hearing. Because the informant's testimony did not support defendant's defense of entrapment, the court chose not to disclose the informant's identity.

The court acknowledged defendant and his father knew who the informant was. Because of that, the court thought there had to be a stipulation that there was an informant in this case without disclosing his identity and an identification by defendant of

11

the informant in a photo in case the prosecution chose to contest defendant's identification.

      B.    *Analysis*

      1.    *Beast was an informer for purposes of section 1041.*

Defendant first contends the nondisclosure privilege did not apply to Beast because he was not an informer within the meaning of section 1041. Acknowledging he does not have access to Agent Crowder's and the informant's testimony, defendant nonetheless claims Beast was not an informer under section 1041 because he did not provide any information to law enforcement showing defendant had violated a law. Defendant reads section 1041 too narrowly.

Section 1041 grants a public entity a privilege not to disclose, and to prevent from being disclosed, the identity of a person who furnished information to a law enforcement officer "purporting to disclose a violation of a law of the United States or of this state." (§ 1041, subd. (a).) The public entity may claim this privilege when disclosure is forbidden by federal or state statute, or, as the prosecution claimed here, when disclosure of the identity "is against the public interest because the necessity for preserving the confidentiality of [the informer's] identity outweighs the necessity for disclosure in the interest of justice." (§ 1041, subd. (a)(2).)

Quoting Professor Wigmore, the United States Supreme Court explained the purpose of the public entity's privilege not to disclose an informant as follows: " 'A genuine privilege, on . . . fundamental principle . . . , must be recognized for the *identity of persons supplying the government with information concerning the commission of crimes*. Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary award, he will usually condition his cooperation on an assurance of anonymity—to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of

defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship.' " (*McCray v. Illinois* (1967) 386 U.S. 300, 308-309 [18 L.Ed.2d 62, 69], original italics; quoting 8 Wigmore, Evidence (McNaughton rev. 1961) § 2374.)

Defendant's narrow reading of section 1041 runs contrary to the statute's language and the privilege's purpose. An informer under the statute is someone who confidentially discloses a violation of law. Nothing in the statute limits its application to disclosures regarding a particular person. Moreover, defendant's reading defeats the privilege's purpose. For example, informers may be useful in ongoing investigations involving multiple parties, and their communications with police in those circumstances may not always concern every person prosecuted as a result of the investigation. Nonetheless, the informer's and the government's interest in protecting the informer's identity is the same as when the informer's communication leads to prosecution of a certain person. There is no evidence the Legislature intended the privilege not to apply in those circumstances. We thus interpret section 1041 as it is written, broadly and clearly, to protect an informer's identity beyond a single prosecution resulting from the informer's information. With this understanding in mind, and relying on the sealed testimony, which we have reviewed, we conclude Beast was an informer for purposes of section 1041.

2. *The trial court did not abuse its discretion by not disclosing the informer's identity and by sustaining Agent Crowder's invocation of privilege.*

Defendant contends the trial court abused its discretion by refusing to disclose the informant's identity, which denied defendant the opportunity to confirm the informant

13

was a government agent and call him as a witness. Defendant also contends the court abused its discretion when it sustained Agent Crowder's invocations of his privilege not to testify in order to protect the informant's identity. Defendant argues the court's actions denied him his constitutional due process rights. We conclude the court did not abuse its discretion or deny defendant his due process rights.

As already stated, section 1041 granted the People a privilege not to disclose, and to prevent others, such as defendant, from disclosing, the identity of a confidential informant. (§ 1041, subd. (a).) The People may claim this privilege after establishing disclosure "is against the public interest because the necessity for preserving the confidentiality of [the informer's] identity outweighs the necessity for disclosure in the interest of justice." (§ 1041, subd. (a)(2).)

When weighing the necessity to keep an informant's identity confidential against the necessity for disclosure in the interest of justice, a trial court must order the prosecution to disclose the informant's identity and his location, or suffer dismissal of the case, if the informant is shown to be a material witness. (*People v. Lawley* (2002) 27 Cal.4th 102, 159 (*Lawley*).) "An informant is a material witness if there appears, from the evidence presented, a reasonable possibility that he or she could give evidence on the issue of guilt that might exonerate the defendant. [Citation.]" (*Id.* at pp. 159-160.) A trial court does not abuse its discretion denying the motion to disclose where "the record demonstrates, based on a sufficiently searching inquiry, that the informant could not have provided any evidence that, to a reasonable possibility, might have exonerated defendant." (*Id.* at p. 160.)

The trial court determines an informant's materiality pursuant to procedures provided by section 1042. That statue requires a court to convene a hearing outside the presence of the jury on a party's demand for disclosure of an informant's identity. If, during the hearing, the People claim the nondisclosure privilege or a person authorized to claim the privilege refuses to answer any questions because the answer might disclose an

14

informant's identity, the prosecution may request the court to convene an in camera hearing. At that hearing, the prosecution may offer evidence that discloses the informant's identity "to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial." (§ 1042, subd. (d).)

After the hearings, the court "shall not order disclosure, nor strike the testimony of the witness who invokes the privilege, nor dismiss the criminal proceeding, if the party offering the witness refuses to disclose the identity of the informant, unless, based upon the evidence presented at . . . [the hearings], the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial." (§ 1042, subd. (d).) "[W]hen an *in camera* hearing has been held and the trial court has reasonably concluded, as in the instant case, that the informant does not have knowledge of facts that would tend to exculpate the defendant, disclosure of the identity of the informer is prohibited by . . . section 1042, subdivision (d), since the public entity has invoked the privilege pursuant to section 1041." (*People v. McCarthy* (1978) 79 Cal.App.3d 547, 555, original italics.)

The trial court here complied with section 1042's procedures. We thus are concerned only with the court's decision. We review the trial court's ruling for an abuse of discretion. (*Davis v. Superior Court* (2010) 186 Cal.App.4th 1272, 1277.)

We conclude the trial court did not abuse its discretion when it denied defendant's motion to disclose the informant's identity. We have reviewed the record, including the sealed transcripts, and can report the trial court engaged in a sufficiently searching inquiry of both witnesses. From this inquiry and the evidence obtained, the court reasonably concluded the informant could not have provided any evidence that, to a reasonable possibility, might have exonerated defendant.

Defendant challenges the court's decision on numerous grounds. He argues the court's ruling denied him a fair trial because, despite the parties' stipulation, it denied

him the opportunity to establish that Beast was in fact a government agent, an element of his entrapment defense.[4] We disagree. The court informed the jury a government informant attended the barbeque, and defendant introduced evidence to establish the informant was Beast. Defendant testified he knew Beast was an informant and Repo was an undercover officer. He said Beast was acting funny around Repo for some reason. He identified Beast and Agent Crowder together in a photograph. The trial court told the jury this identification was done in case the prosecutor disputed defendant's claim about Beast's status. The fact the prosecutor did not dispute defendant's claim supported defendant's testimony about Beast's status. Since the jury was instructed the testimony of only one witness could prove any fact, it had the opportunity to determine whether Beast was a government agent.

Defendant argues that even if the jury knew Beast was the informant, the informant was still a material witness because he would have corroborated other parts of defendant's testimony. Defendant claims such parts included his testimony that Beast and defendant's father were friends, that defendant had reason to believe Beast was in danger based on threats from the Wheels of Soul, that defendant was at Agent Crowder's barbeque, and, defendant asserts, that Beast asked defendant previously to hold a gun at a Ching A Ling meeting. Defendant complains that without corroborating testimony from Beast, the prosecution was able to argue defendant was a liar who completely fabricated his defense.

This argument misses the mark. The test for determining whether an informant is a material witness is whether the informant has "knowledge of facts that would tend to exculpate the defendant." (*People v. McCarthy, supra,* 79 Cal.App.3d at p. 555.) That the informant may have known whether defendant attended Agent Crowder's barbeque

---

**4** Entrapment is conduct by a law enforcement agent likely to induce a normally law-abiding person to commit a crime. (*People v. Barraza* (1979) 23 Cal.3d 675, 689-690.)

16

does not tend to exculpate defendant from the charge of possessing a firearm at the barbeque.  Mere corroboration of incidental facts does not exculpate defendant from the principal charge nor does it override the state's interest in protecting an informant's identity.

Defendant claims the corroboration at least would have precluded the prosecution from implying in its jury argument that Beast was not in fact a confidential informant.  True, but defense counsel could also have implied in his argument the prosecution failed to call the informant because he would have confirmed the defendant's testimony.  Even though neither argument is correct, both could have been made.

Defendant contends his need to call the informant as a witness outweighed the need to preserve whatever confidentiality the informant retained given the amount of information defendant already knew and disclosed about him.  At federal common law, the privilege against disclosure was forfeited if the identity of the informer had "been disclosed to those who would have cause to resent the communication."  (*Roviaro v. United States* (1957) 353 U.S. 53, 60 [1 L.Ed.2d 639, 645], fns. omitted.)

In California, however, forfeiture does not occur merely upon prior disclosure or discovery of the informant's identity.  Under section 1041, "the test is whether the public interest would suffer by the disclosure.  Conceivably, even when the informer may be known to persons who have cause to resent the communication, disclosure in open court might still be against the public interest.  A defendant who knows the identity of the informer, however, will ordinarily not be prejudiced by a refusal to disclose that identity."  (*People v. McShann* (1958) 50 Cal.2d 802, 807.)

The Legislature has declared it is against the public interest to disclose an informant's identity unless the court concludes the informant is a material witness, i.e., "there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial."  (§ 1042, subd. (d).)  The trial court concluded the informant was not a material

17

witness and we have affirmed that conclusion. Defendant thus was not entitled to disclosure, even though he knew the informant's identity.

The facts of this case illustrate the policy behind not disclosing the identity of a known informant. When a material witness's identity must be disclosed, the prosecution must disclose the informant's name and "all pertinent information which might assist the defense to locate him." (*Eleazer v. Superior Court* (1970) 1 Cal.3d 847, 851.) Here, even though defendant knew the informant and knew him by a proper name and a gang moniker, defendant did not know where the informant was located. Indeed, nothing in the record indicates the court knew where the informant was located. All that was known was that the informant's attendance at court required advance scheduling, working with ATF "handlers," and a plane trip.

Where an informant is *not* a material witness and his whereabouts are unknown to the defendant, the state maintains its strong interest in protecting the informant, the informant's family, and the continuing flow of information the state can gain from the informant. There is no justifiable reason to disclose an informant's location when the informant is not a material witness, even though the defendant knows the informant. (See *United States v. Sharp* (6th Cir. 1985) 778 F.2d 1182, 1186 [privilege protects disclosure of informant's location although informant's name is known].)

Defendant claims the trial court abused its discretion by judging the informant's credibility and the truthfulness of his testimony without subjecting the informant to cross-examination and allowing a jury to determine the informant's credibility. Defendant cites *People v. Patejdl* (1973) 35 Cal.App.3d 936 (*Patejdl*) and *In re Marcos B.* (2013) 214 Cal.App.4th 299 (*Marcos B.*) to support his argument, contending these cases establish disclosure is required where the informant's testimony conflicts with the defendant's and where the informant's testimony is uncorroborated.

In *Patejdl*, the Fifth Appellate District affirmed a trial court's denial of the defendant's motion to discover the address of a paid informant who bought pills from

18

defendant. Reviewing precedent, the court opined that disclosure of an informer's address and identity under section 1041 was required where "the informer's testimony is the primary evidence on the issue of guilt and the conflict between the testimony of the defendant and that of the informer is crucial and determinative." (*Patejdl, supra,* 35 Cal.App.3d at p. 943.) The court held where there was no substantial conflict between the testimony of the defendant and that of the informer on the issues determinative of guilt, disclosure of the informant's address was not required, as the defendant's need to impeach the informant had been diminished and there was no possibility impeachment could affect the trial's outcome. (*Ibid.*)

In *Marcos B.*, the Fourth Appellate District, Division Three, ruled the trial court abused its discretion when it determined the location from which a police officer observed the defendant engage in drug sales was privileged under section 1040. The appellate court reviewed the transcript from the in camera hearing and held the prosecution failed to disclose sufficient information about the surveillance location for the court to determine whether the location was privileged. (*Marcos B., supra,* 214 Cal.App.4th at p. 309.) Alternatively, the appellate court held the trial court erred in determining the location was not material. A surveillance location is not material where the officer's testimony about what he saw is sufficiently corroborated by independent evidence. The court found no corroborating evidence that would render the location immaterial. (*Id.* at pp. 312-315.)

From these holdings, defendant asserts where there is significant conflict between a defendant's testimony and the informant's testimony, the defendant's need to cross-examine and impeach the informer will require disclosure. Our Supreme Court, however, has not stated the test in those terms. Instead of determining whether the informant's testimony is corroborated, the court must determine whether the informant is a material witness. "An informant is a material witness if there appears, from the evidence presented, a reasonable possibility that he or she could give evidence on the issue of guilt

*that might exonerate the defendant*." (*Lawley, supra,* 27 Cal.4th at p. 159, italics added.) If the trial court determines there is not a reasonable possibility the informant's evidence on the issue of guilt might exonerate the defendant, disclosure is denied.

Piercing the privilege does not turn on mere lack of corroboration. "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (*Roviaro v. United States, supra,* 353 U.S. at p. 62.)

Defendant's argument goes to his broader contention that the trial court denied him his rights to due process, confrontation, jury trial, and compulsory process by denying the motion to disclose and sustaining Agent Crowder's invocation of the privilege. We disagree. First, that the decisions were made following in camera hearings in which defendant did not participate did not violate defendant's constitutional rights. In *People v. Hobbs* (1994) 7 Cal.4th 948, the California Supreme Court implicitly approved the in camera hearing procedure embodied in section 1042, noting the state had a strong and legitimate interest in protecting the confidentiality of its informants and that the codified rules and privileges were devised to implement that fundamental right. (*People v. Hobbs, supra,* at p. 967.) In *People v. Levine* (1984) 152 Cal.App.3d 1058, 1070-1071, the Second Appellate District, Division Seven, held the use of an in camera hearing did not deprive a narcotics offender of his constitutional rights to a public trial, to the compulsory attendance of witnesses, to be present and have effective aid of counsel, to confront and cross-examine witnesses, and to due process of law. The appellate court stated: "While some defense critics have been distrustful of any unilateral determination of materiality reached without participation by defense counsel, and have been critical of

20

placing an additional burden of judicial investigation upon the trial judge, the United States Supreme Court in *Taglianetti v. United States* (1969) 394 U.S. 316, 317-318 [22 L.Ed.2d 302, 305] held: '[W]e cannot hold that "the task is too complex, and the margin for error too great, to rely wholly on the *in camera* judgment of the trial court." ' " (*People v. Levine, supra,* 152 Cal.App.3d at p. 1070, original italics.)

In *People v. Reel* (1979) 100 Cal.App.3d 415, 420, footnote 1, a case involving a felon in possession of a concealable firearm, the Second Appellate District, Division One, noted "[t]he constitutionality of the *in camera* proceeding has been upheld." (Original italics.) In *People v. O'Brien* (1976) 61 Cal.App.3d 766, 774-775, a burglary case, the First Appellate District, Division One, held that use of an in camera hearing as provided by section 1042, subdivision (d), did not deprive defendants of their constitutional rights of confrontation, cross-examination, compulsory process, and effective use of counsel. In *People v. Pacheco* (1972) 27 Cal.App.3d 70, 81-82, the First Appellate District, Division Four, observed: "It is the invocation of the basic privilege [of a public entity to decline disclosure of an informant's identity] that denies the informer's name to the defendant, not the *in camera* hearing, which is only the method by which the court determines the applicability of the privilege. If the Sixth Amendment were to apply, it would deny the privilege, the right to which has been determined to be valid." (*Id.* at p. 82, original italics.)

In short, "[i]t is for *the court* to determine whether the public interest will suffer by disclosure." (*People v. McShann, supra,* 50 Cal.2d at p. 807, italics added.)

Second, no one denies the privilege not to disclose an informant impinges on a defendant's ability to raise a defense or cross-examine a witness. However, those rights are not absolute. The state's interest in preserving confidentiality "must be balanced against the defendant's right to due process and a fair trial." (*People v. Lee* (1985) 164 Cal.App.3d 830, 835.) That balance is determined on a case-by-case basis, and it hinges on whether the informant is a material witness, i.e., whether the informant can give

21

exculpatory evidence. (*Davis v. Superior Court, supra,* 186 Cal.App.4th at pp. 1276-1277.) If a trial court has reasonably concluded, "based on a sufficiently searching inquiry," the informant could not provide evidence that, to a reasonable possibility, could exonerate defendant, the privilege prevails and defendant cannot complain of a denial of due process. (See *Lawley, supra,* 27 Cal.4th at p. 160.) "[A]n informant is not a 'material witness' *nor does his nondisclosure deny the defendant a fair trial* where the informant's testimony although 'material' on the issue of guilt could only further implicate rather than exonerate the defendant." (*People v. Alderrou* (1987) 191 Cal.App.3d 1074, 1080-1081, italics added.) Such is the case here.

Defendant's challenges to the trial court's acceptance of Agent Crowder's invocations of his privilege under section 1040 not to disclose official information fall for reasons similar to those discussed above. Section 1040 grants a privilege not to disclose official information if disclosure "is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice." (§ 1040, subd. (b)(2).) Official information is information "acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made." (§ 1040, subd. (a).) " 'Ongoing investigations fall under the privilege for official information.' [Citations.]" (*People v. Suff* (2014) 58 Cal.4th 1013, 1059.)

Defendant contends the record does not indicate that Agent Crowder's in camera testimony needed to remain confidential, or that the trial court actually assessed the questions posed to Crowder in open court to determine whether the privilege should apply. We disagree. First, as stated above, we have reviewed Crowder's in camera testimony and concur the testimony was privileged under section 1040.

Second, our review of the record shows the court did not abuse its discretion in assessing the questions asked Agent Crowder at trial and determining whether they

22

sought official information needing protection for the public interest. The court stated its reasons on the record and its reasoning was plain based on the court and counsel's earlier discussions.

### 3. *Lack of prejudicial error*

Even if we were to conclude the trial court erred in not disclosing the informant's identity or ordering Agent Crowder to answer questions about the informant, we would find no prejudicial error. When the court's actions are analyzed under the federal standard of prejudicial error (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]), it is beyond reasonable doubt had the court disclosed the informant's testimony and allowed defendant to cross-examine the informant, and had it rejected Agent Crowder's invocations of privilege, defendant would not have received a better outcome at trial.

Because we have read the informant's and Agent Crowder's sealed testimony, we conclude without hesitation the informant was not a material witness, and had he testified after his identity was disclosed, his testimony would not have benefitted defendant. It would have harmed him. Defendant admitted he possessed the gun with the same serial number long before and during the current offense, and he was arrested with the same gun long after the current offense. Defendant also admitted he was a felon. During the in camera hearing, the informant testified he took none of the actions defendant alleged he took to entrap defendant. Since the informant's testimony directly rebuts defendant's testimony, we can say without a reasonable doubt it would not have benefited, but would have harmed defendant had it been admitted.

DISPOSITION

The judgment is affirmed.


     NICHOLSON    , J.


We concur:


     BLEASE     , Acting P. J.


     HULL     , J.