Filed 11/26/18 (unmodified opinion attached)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KEVIN LEROY KELLY,<br><br>    Defendant and Appellant. | F071934<br><br>(Kern Super. Ct. No. BF159187A)<br><br>**ORDER MODIFYING OPINION (CHANGE IN JUDGMENT)** |

It is ordered that the opinion filed herein on November 1, 2018, be modified as follows:

1.      On page 6, in the table under the prior offense column for item (6), "§ 664, 1320.5" should be replaced with "§ 664, 594."

2.      The first paragraph under part II., at the bottom of page 16 and the top of page 17, is deleted and the following inserted:

> The court imposed a 16-month sentence for evading a pursuing peace officer consecutively with an 8-year sentence for transportation of methamphetamine.  Kelly argues the trial court erred in imposing a consecutive sentence for his evading a pursuing peace officer conviction rather than staying the sentence under section 654, which bars multiple punishment for the same act or omission.  (*People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*).)  As Kelly contends, it was error for the trial court to impose a consecutive sentence if section 654 applies.  (*People v. Jones* (2012) 54 Cal.4th 350, 353.)

3.     The disposition on page 22 is deleted and the following inserted:

## **DISPOSITION**

The judgment is modified to strike seven of the eight 1-year prior prison term enhancements.  The matter is remanded for resentencing and the trial court is directed to forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

This modification changes the judgment.

MEEHAN, J.

WE CONCUR:

HILL, P.J.

POOCHIGIAN, J.

2.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KEVIN LEROY KELLY,<br><br>    Defendant and Appellant. | F071934<br><br>(Super. Ct. No. BF159187A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Steven M. Katz, Judge.

Peggy A. Headley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Ivan P. Marrs, Lewis A. Martinez, and William, K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted appellant Kevin Leroy Kelly of six counts: reckless evasion of a pursuing peace officer (Veh. Code, § 2800.2 (count 1)); transportation or sale of methamphetamine (Health & Saf. Code, § 11379, subd. (a) (count 2)); possession of methamphetamine for purpose of sale (Health & Saf. Code, § 11378 (count 3)); possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1) (count 4));[1] possession of ammunition by a felon (§ 30305, subd. (a)(1) (count 5)); and possession of a short-barreled rifle or short-barreled shotgun (§ 33215 (count 6)). The court also found true a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and nine prior prison term enhancements (§ 667.5, subd. (b)) (section 667.5(b)).

On July 8, 2015, the court sentenced Kelly to prison for the determinate term of 18 years 8 months based on the following: the upper term of four years for transportation of methamphetamine, doubled to eight years under the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)); plus eight months (one-third the midterm of two years) for reckless evasion, doubled to 16 months under the Three Strikes law; plus eight months (one-third the midterm of two years) for being a felon in possession of a firearm, doubled to 16 months under the Three Strikes law; plus eight years for eight prior prison term enhancements.[2] The terms imposed on counts 3, 5, and 6 were stayed under section 654.

Kelly presents four claims on appeal. Kelly first argues that two of the prior prison term enhancements under section 667.5(b) were imposed erroneously because the convictions on which they were based had been reclassified from felonies to

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

[2]    As described further below, even though the court found true nine prior prison enhancements, it only sentenced Kelly for eight enhancements without providing a reason for the failure to apply the enhancement to each of Kelly's prior prison terms.

misdemeanors pursuant to Proposition 47 before sentencing. Kelly argues that since they were to be considered misdemeanors for all purposes, the convictions no longer met the elements required for enhancements under section 667.5(b). Respondent concedes, and we agree.

The remaining prior prison term enhancements were based on prior felonies that have not been reclassified. Of those, six of the felonies occurred before the two felonies that were redesignated under Proposition 47, and one occurred after the redesignated felonies and before the convictions challenged in this appeal.[3] Kelly argues that the enhancements based on the six earlier prison terms should be reversed as well. He contends that the "washout" provision of section 667.5(b) applies because the reduction of the two felonies to misdemeanors under Proposition 47 resulted in a period exceeding five years during which he was free of felony convictions. As such, he contends that the six prior prison terms occurring before that five-year period should wash out and the enhancements based on those prison terms be stricken. Respondent argues that the washout provision does not apply because prior prison terms wash out only if there is an unbroken five-year period during which a defendant is free of both felony offenses and custody in prison. Respondent maintains that the reclassification of two of Kelly's convictions as misdemeanors did not alter the fact that he served prison terms for those convictions and, as a result, the requirements of the washout provision were not satisfied.

We agree with Kelly on this point as well. The intent of Proposition 47 is to reduce punishments that were a result of felony convictions reduced under its provisions. (*People v. Buycks* (2018) 5 Cal.5th 857, 876 (*Buycks*) [Proposition 47 intended to have an "ameliorative effect on any new collateral consequence imposed after a successful Proposition 47 resentencing"].) Interpreting the washout provision to disregard prison terms for reduced convictions honors the intent of the voters in enacting Proposition 47.

---

**3** A chart of the relevant convictions and prison terms is provided below.

Kelly next claims that the court erred in applying a prior prison term enhancement based on a prior conviction from April 1992. Having found the washout provision applies to that prior conviction, we find the claim moot.

Kelly, in his last two claims, argues that the court should have stayed rather than imposed punishment on the reckless evasion charge under section 654, and directs the court to independently review a sealed transcript of an in camera hearing to determine whether the identity of a confidential informant should be disclosed. We find Kelly is not entitled to relief on either of these claims.

For the reasons set forth below, we will order all but one of the enhancements under section 667.5(b), stricken and remand for resentencing.

**Factual History**

On February 12, 2015, two sheriff's deputies were on patrol in Kern County in an unmarked vehicle. While stopped at a traffic light, the deputies noticed a red Toyota Corolla with a defective brake light and expired registration. The deputies activated their vehicle's lights and siren to initiate a traffic stop. The Toyota fled and the deputies pursued. During the pursuit, the driver of the Toyota committed several traffic violations, including running a red light and two stop signs, and driving on the opposite side of the road. The pursuit ended when the Corolla lost control and collided into a parked truck.

The deputies approached the car, and saw Kelly sprawled across the front seats. On the driver's side floorboard, the deputies saw and recovered a large amount of a white, crystal-like substance, later determined to be about 105 grams of methamphetamine. The deputies found a cell phone on the passenger seat, and a police scanner on the passenger side floorboard. The deputies searched Kelly, recovering $274, another cell phone, and a padlock key. The arresting deputy, testifying as an expert on narcotics use and sale, opined that Kelly possessed the methamphetamine for the purpose of sale.

4.

Later that night, the sheriff's deputies went to a storage facility. There, the deputies used the key found on Kelly's person to open a storage unit at the facility. Inside the unit, the deputies found paperwork and photo identification for Kelly, a box containing live shotgun shells, and a single barrel sawed-off shotgun.

**Procedural History**

After a jury trial, Kelly was convicted of all six counts. The court proceeded to hold a trial on nine prior conviction allegations and found them all true. Kelly moved to have the oldest felony conviction stricken under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), but the court denied the motion.

The table below summarizes the nine enhancements alleged in the complaint, the dates Kelly was released from prison for each offense as shown in the probation report, the rulings on the Proposition 47 petitions, and the ruling on the motion to strike.[4]

| Prior offense | Conviction date | Sentence | Release date | Rulings on Prop. 47 petitions | Rulings on motions to strike |
|---|---|---|---|---|---|
| (1) First degree burglary (former § 460.1) | 5/25/90 | 2 years prison | 6/30/91 | | Denied (*Romero*) |
| (2) Failure to appear upon release (§ 1320, subd. (b)) | 4/28/92 | 3 years probation; 378 days jail | Not indicated | | |
| (3) Felon in possession of firearm (former § 12021, subd. (a)) | 12/3/92 | 4 years prison | 12/28/94 | | |
| (4) Felon in possession of firearm (former § 12021, subd. (a)) | 10/6/95 | 32 months prison | 09/18/97 | | |

---

**4**     For ease of reference, we shall refer to the prior convictions by the numbers provided in the chart.

| Prior offense | Conviction date | Sentence | Release date | Rulings on Prop. 47 petitions | Rulings on motions to strike |
|---|---|---|---|---|---|
| (5) Failure to appear for felony charge (§ 1320.5) | 12/16/99 | 6 years prison | 5/15/04 | | |
| (6) Attempted vandalism (§§ 664, 1320.5) | 3/23/05 | 16 months prison | 7/12/05 | | |
| (7) Receiving stolen property (§ 496) | 6/26/06 | 44 months prison | Not indicated | Granted | |
| (8) Attempted unlawful possession of controlled substance (§ 664, Health & Saf., Code, § 11350) | 12/15/09 | 16 months prison | 11/06/10 | Granted | |
| (9) Second degree burglary (§ 460, subd. (b)) | 10/12/12 | 4 years prison | 5/24/14 | | |

At the trial on the prior prison enhancements, defense counsel noted that convictions 7 and 8 above had previously been reduced to misdemeanors under Proposition 47 and, without those convictions, more than five years passed from the ninth felony conviction and the six earlier felony convictions, and Kelly should not be subject to enhancements for the six earlier felony convictions due to the washout rule.

Kelly filed a formal motion at sentencing, raising the same argument. He argued he only should be subject to a prior prison enhancement under section 667.5(b) for his most recent prior conviction and conviction 9, and his remaining prior felony convictions should wash out.

The court noted that Kelly presented "fair arguments." However, the court denied the motion on two grounds. It first noted that there was no authority on the matter, and that until there was an appellate court decision stating that Proposition 47 applied to enhancements under section 667.5(b), the court was not able to grant relief in Kelly's

favor.  Further, the court found that there was nothing in the language of the initiative or information contained in the voter information guide that would indicate the intent of voters to "totally change the sentencing scheme that's been in effect and predated three strikes."  The court enhanced Kelly's sentence by eight years, however, the court did not describe why Kelly was subject to eight years of enhancements, when it was found true that he was convicted of nine prior prison enhancements.  Specifically, there was no discussion regarding which of the nine prior convictions did not result in a prior prison enhancement under section 667.5(b).

## DISCUSSION

### I.     Proposition 47 and Prior Prison Enhancements Under Section 667.5

As described, two of Kelly's prior convictions were redesignated as misdemeanors prior to sentencing.  Regardless, the court imposed one-year enhancements under section 667.5(b) for those prior prison terms.

Section 667.5(b) imposes a one-year enhancement for a prior, separate prison term served on a felony conviction. "Imposition of a sentence enhancement under … section 667.5 requires proof that the defendant:  (1) was previously convicted of a felony; (2) was imprisoned as a result of that conviction; (3) completed that term of imprisonment; and (4) did not remain free for five years of both prison custody and the commission of a new offense resulting in a felony conviction." (*People v. Tenner* (1993) 6 Cal.4th 559, 563 (*Tenner*).)  Section 667.5(b) provides for a one-year sentence enhancement on a new felony conviction resulting in a prison sentence where the defendant has previously been convicted of a felony and served a prison term.  The enhancement is imposed for "each prior separate prison term … for any felony …."  "Under the washout provision, however, the enhancement is *not* imposed if the defendant is free of both felony convictions and incarceration in prison for five years following release from the previous incarceration.  (§ 667.5, subd. (b).)" (*People v. Warren* (2018) 24 Cal.App.5th 899, 909 (*Warren*).)  Thus, "'if a defendant is free from both prison

7.

custody *and* the commission of a new felony for *any* five-year period following discharge from custody or release on parole, the enhancement does not apply.'" (*Buycks*, *supra*, 5 Cal.5th at p. 889.)

### A. Proposition 47

On November 4, 2014, California voters enacted Proposition 47, the Safe Neighborhoods and Schools Act (hereafter Proposition 47), which went into effect the next day. (Cal. Const., art. II, § 10, former subd. (a); *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089.) Proposition 47 reduced certain felonies to misdemeanors for eligible offenders. It created two separate mechanisms for reducing convictions to misdemeanors, depending on whether the person was currently serving a sentence for an eligible felony conviction or had completed his sentence. (*People v. Abdallah* (2016) 246 Cal.App.4th 736, 743–744.) Relevant to the instant appeal, section 1170.18, subdivision (f), authorizes the court to redesignate convictions for persons who have already completed their sentences. (*Abdallah*, *supra*, at p. 744.) Based on its authority under section 1170.18, subdivision (f), the court redesignated Kelly's seventh and eighth prior convictions to misdemeanors.

We must determine what effect redesignation under Proposition 47 has on the application of enhancements under section 667.5(b). Specifically, should the language "misdemeanor for all purposes" from section 1170.18, subdivision (k), be interpreted so that prior prison custody based on convictions reduced under Proposition 47 is disregarded when determining whether enhancements under section 667.5(b) should apply? We shall review the statutory language and intent of the voters in determining the effect of section 1170.18 on section 667.5(b).

"[T]he language used in a statute or constitutional provision should be given its ordinary meaning, and '[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters).'"

8.

(*People v. Valencia* (2017) 3 Cal.5th 347, 357–358 (*Valencia*), quoting *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)  To that end, we generally must "'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and have warned that '[a] construction making some words surplusage is to be avoided.'"  (*Valencia*, *supra*, at p. 357, quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

In *Valencia*, the California Supreme Court addressed whether Proposition 47 amended California's Three Strikes Reform Act of 2012 (Three Strikes Reform Act).  (*Valencia*, *supra*, 3 Cal.5th at pp. 351–352.)  Based on uncodified provisions of Proposition 47 and information contained in the voter guide stating that Proposition 47 "'ensures that sentences for people convicted of dangerous crimes like rape, murder, and child molestation are not changed'" (*Valencia*, *supra*, at p. 362), the court found that "neither the initiative's text nor its supporting materials describe any intention to amend the criteria for the resentencing of recidivist serious or violent felons" and that it did not apply to the Three Strikes Reform Act.  (*Valencia*, *supra*, at p. 357.)  Rather, as described, the "expressly stated central objectives of Proposition 47 were to redesignate specified minor felony offenses as misdemeanors and to permit those persons previously convicted of these same low-level felonies to seek resentencing as misdemeanors" (*id.* at p. 363) and have an "ameliorative effect on any new collateral consequence imposed after a successful Proposition 47 resentencing" (*Buycks*, *supra*, 5 Cal.5th at p. 876).

## B.    Prior Convictions 7 and 8

Section 1170.18, subdivision (k), provides that once redesignated, prior convictions "*shall be considered a misdemeanor for all purposes*," except as it relates to possession or control of a firearm, an exception not applicable here.  (Italics added; see *Buycks*, *supra*, 5 Cal.5th at p. 887; accord, *Warren*, *supra*, 24 Cal.App.5th at p. 909.)  Because Kelly's two prior convictions were redesignated as misdemeanors prior to his sentencing in this case, the enhancements pursuant to section 667.5(b) cannot be

9.

imposed.  (*Buycks*, *supra*, 5 Cal.5th at p. 888; accord, *Warren*, *supra*, 24 Cal.App.5th at p. 909.)  Respondent concedes the argument, which was directly addressed by the California Supreme Court in *Buycks*.

The California Supreme Court "conclude[d] that Proposition 47's mandate that the resentenced or redesignated offense 'be considered a misdemeanor for all purposes' (§ 1170.18, subd. (k)) permits defendants to challenge felony-based section 667.5 and 12022.1 enhancements when the underlying felonies have been subsequently resentenced or redesignated as misdemeanors."  (*Buycks*, *supra*, 5 Cal.5th at p. 871.)  "[T]he 'misdemeanor for all purposes' provision operates prospectively—by having ameliorative effect on any new collateral consequence imposed after a successful Proposition 47 resentencing."  (*Id.* at p. 876.)

Noting that Proposition 47 informed the voters that the act "'shall be broadly construed to accomplish its purposes,'" the California Supreme Court held that the language of section 1170.18, subdivision (k), which mandates that the reduced conviction "'*shall be considered a misdemeanor for all purposes*'" "plainly extends the retroactive ameliorative effects of Proposition 47 to mitigate any *future* collateral consequence of a felony conviction that is reduced under the measure."  (*Buycks*, *supra*, 5 Cal.5th at pp. 877–878.)  It "presume[s] that newly enacted legislation mitigating criminal punishment reflects a determination that the 'former penalty was too severe' and that the ameliorative changes are intended to 'apply to every case to which it constitutionally could apply .…'"  (*Id.* at p. 881, quoting *In re Estrada* (1965) 63 Cal.2d 740, 745.)  Stated differently, "Proposition 47 was intended to broadly mitigate the collateral penal consequences of certain narcotics and larceny-related offenses so that they could be treated as a misdemeanor for all purposes .…"  (*Buycks*, *supra*, at p. 883.)

The California Supreme Court also addressed the fact that enhancements under section 667.5(b) are rooted in a defendant's status as a recidivist offender and the government's argument that Proposition 47 did not explicitly address the intent of earlier

10.

legislation to punish recidivist offenders. (*Buycks*, *supra*, 5 Cal.5th at p. 886.) The California Supreme Court noted that while Proposition 47 did not expressly mention its effect on collateral consequences, the information in the voter guide stated that the "'measure reduces *penalties* for certain offenders convicted of nonserious and nonviolent property and drug crimes'" and would allow "'certain offenders who have been previously convicted of such crimes to apply for reduced sentences.'" (*Buycks*, *supra*, at p. 887, quoting Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35 (Voter Information Guide).) "From these particular statements in the ballot materials for Proposition 47, it follows that a reduced penalty for a crime that had previously been classified as a felony would include a penalty that takes the form of an enhancement or other recidivist-based punishment that was alleged with that same felony." (*Buycks*, *supra*, 5 Cal.5th at p. 887.) Additionally, extending the ameliorative effects of Proposition 47 to enhancements derived from the conviction subject to reduction is consistent with the measure's goal of generating savings by reducing the incarceration terms of those offenders. (*Buycks*, *supra*, at p. 888.)

Based on the foregoing reasoning, the California Supreme Court held that "[a] successful Proposition 47 petition or application can reach back and reduce a defendant's previous felony conviction to a misdemeanor conviction because the defendant 'would have been guilty of a misdemeanor under' the measure had it 'been in effect at the time of the offense.' (§ 1170.18, subds. (a), (f).) Therefore, if the 'felony conviction that is recalled and resentenced … or designated as a misdemeanor' conviction becomes 'a misdemeanor for all purposes,' then it can no longer be said that the defendant 'was previously convicted of a felony' (§ 1170.18, subd. (k); *People v. Tenner*, *supra*, 6 Cal.4th at p. 563), which is a necessary element for imposing the section 667.5, subdivision (b) enhancement." (*Buycks*, *supra*, 5 Cal.5th at p. 889.)

Here, the trial court found enhancements for prior convictions 7 and 8 proper under section 667.5 despite the convictions having already been redesignated as

11.

misdemeanors for two reasons. First, there was no appellate decision directing the court to provide Kelly relief and, second, that it would go against the intent of enacting recidivist statutes such as section 667.5. Now, the Supreme Court has provided authority stating that enhancements under section 667.5 should not apply to prior convictions that were redesignated as misdemeanors. Moreover, the court in *Buycks* reasoned that the enactment of Proposition 47 reflects a determination that the former penalty scheme was too severe, including penalties in the form of enhancements. (*Buycks*, *supra*, 5 Cal.5th at p. 881.) The enhancements under section 667.5(b) for prior convictions 7 and 8 should be stricken.

### C.     Application of the Washout Rule

Kelly acknowledges that even in light of the redesignation of the two convictions, his most recent prior conviction for second degree robbery in 2012 remains, and that he should be subject to a prior prison term enhancement for that conviction. However, once the seventh and eighth prior convictions were redesignated as misdemeanors, Kelly argues that over five years passed since his release from custody on July 12, 2005, from prior conviction 6 to when he committed prior conviction 9 in 2012 and, therefore, all of his prior convictions but for prior conviction 9 wash out.

Respondent disagrees. Although respondent agrees that prior convictions 7 and 8 shall be prospectively considered misdemeanors, the language of section 667.5(b) requires that the person also remain free from prison custody under the washout rule. Respondent contends that even though prior convictions 7 and 8 are redesignated as misdemeanors, it does not change the fact that Kelly served the underlying prison terms associated with those convictions. Based on the prison terms, respondent argues that Kelly did not remain free for five years of both prison custody and the commission of a new offense resulting in a felony conviction as required under the washout provision of section 667.5 and is still subject to prior prison enhancements for prior convictions 1 through 6.

12.

This issue was addressed by this court in *Warren*, *supra*, 24 Cal.App.5th 899. In *Warren*, the majority held that the language of section 1170.18, subdivision (k), construing recalled or redesignated felonies as "misdemeanors for all purposes," should be interpreted broadly and the only way to harmonize that language with the literal language of the washout provision of section 667.5 is to reject or negate the language of the latter. (*Warren*, *supra*, 24 Cal.App.5th at p. 915.) "[W]e infer that the voters intended successful Proposition 47 petitioners to be relieved of the effects of their former felony convictions, including the effects of the sentences imposed for those convictions. The voters' legislative judgment was that, for the offenses identified in a successful Proposition 47 petition, neither felony status nor felony punishment is appropriate." (*Ibid.*) That intent conflicts with the literal terms of section 667.5(b), which bars the application of the washout rule to those who served prison time during the five-year washout period, regardless of the reason for serving time in prison custody, including if the conviction resulting in prison time is later reduced to a misdemeanor. (*Warren*, *supra*, at p. 916.)

We explained that "[t]he manifest purpose of the reference to being free of incarceration during the washout period is to cause the washout period to begin to run from the prisoner's release date, not the conviction date" and was "intended to ensure that a defendant convicted of a *felony* does not commit another felony for five years after being *released*, as opposed to five years after being convicted." (*Warren*, *supra*, 24 Cal.App.5th at p. 916.) In enacting section 667.5, there was no reason to think the Legislature contemplated, let alone intended to create, increased collateral consequences, based on a "free-floating prison term with no associated felony" created by the reduction of a felony to a misdemeanor under Proposition 47. (*Warren*, *supra*, at p. 916.)

We agree with the reasoning of *Warren*. The language of Proposition 47, construing felonies reduced to misdemeanors for all purposes was intended to "relieve the defendant of the burden of a felony conviction, including the burden of a felony

13.

sentence." (*Warren*, *supra*, 24 Cal.App.5th at p. 917.) The enactment of Proposition 47, therefore, modified the literal terms of the washout provision of section 667.5(b), in that a felony reduced to a misdemeanor under section 1170.18 shall be construed a misdemeanor for all purposes, including the effect of any punishment resulting therefrom. Any prior prison term served as a result of a felony reduced to a misdemeanor under section 1170.18 shall not be construed as prison custody under the washout provision of section 667.5(b).

After we issued *Warren*, the California Supreme Court issued *Buycks*, which lends further support to the reasoning and holdings of *Warren*. As described above, the California Supreme Court in *Buycks* held that convictions resentenced or redesignated under Proposition 47 are considered misdemeanors for all purposes and permits challenges to enhancements under section 667.5. (*Buycks*, *supra*, 5 Cal.5th at p. 871.) The California Supreme Court found that Proposition 47 informed the voters that the act shall be broadly construed to mitigate criminal punishment and that the "ameliorative changes are intended to 'apply to every case to which it constitutionally could apply ….'" (*Buycks*, *supra*, at p. 881, quoting *In re Estrada*, *supra*, 63 Cal.2d at p. 745.) We find the broad interpretation of Proposition 47 by the California Supreme Court indicates that it should likewise apply to mitigate the effects of the washout rule.

Furthermore, dicta contained in *Buycks* indicates such a result. *Buycks* held that once a conviction is reduced to a misdemeanor for all purposes under section 1170.18, it is no longer a felony conviction under section 667.5(b). (*Buycks*, *supra*, 5 Cal.5th at p. 889.) In addition, in a footnote, the California Supreme Court notes that it disapproved *People v. Acosta* (2016) 247 Cal.App.4th 1072, "to the extent that it held that the 'misdemeanor for all purposes' language of section 1170.18, subdivision (k) alters only the status of felony convictions, *not the fact that the defendant has served a qualifying prior felony prison term* for purposes of a section 667.5, subdivision (b) enhancement." (*Buycks*, *supra*, at p. 889, fn. 13, italics added.) This language clearly indicates that the

14.

language of section 1170.18, subdivision (k), does alter more than just the fact of the underlying felony conviction. The California Supreme Court has interpreted the language "misdemeanor for all purposes" of section 1170.18, subdivision (k), broadly. This interpretation is consistent with the general principle to "'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose ….'" (*Valencia*, *supra*, 3 Cal.5th at p. 357; accord, *Warren*, *supra*, 24 Cal.App.5th at p. 908.) If the language of section 1170.18 intended to reduce felonies to misdemeanors, and nothing more, the term "misdemeanor for all purposes" would have no additional meaning. "'[A] construction making some words surplusage is to be avoided.'" (*Valencia*, *supra*, at p. 357.) Based on the intent to broadly mitigate the collateral penal consequences of convictions reduced under section 1170.18, subdivision (k), the language "for all purposes" is construed broadly to ensure that no remaining aspect of the felony conviction should be used to increase future punishment. (*Warren*, *supra*, at p. 904.) The term "misdemeanor for all purposes" requires courts to disregard the prior prison terms associated with redesignated convictions, and treat the convictions, punishment, and other consequences of the convictions as if they were misdemeanor convictions in the first instance.[5]

Respondent argues that this construction conflicts with the legislative intent behind enactment of section 667.5(b) of "'increasing the punishment incurred by repeat offenders and thereby deterring recidivism'" and weakens that statutory scheme. (*People v. Fielder* (2004) 114 Cal.App.4th 1221, 1229.) Even though Proposition 47 did not describe how it would be applied to enhancements or specifically mention section 667.5,

---

[5]    We base this construction of section 1170.18 on the ordinary language of the statute. However, if ambiguous, the intent of the voters to "reduce[] *penalties* for certain offenders convicted of nonserious and nonviolent property and drug crimes" would dictate the same result. (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.)

15.

the reduction of such criminal penalties arising therefrom was a feature, not a flaw, of Proposition 47. We apply a presumption that the voters were "'aware of existing laws at the time the initiative was enacted.'" (*Buycks*, *supra*, 5 Cal.5th at p. 880, quoting *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1048.) We therefore infer that voters knew that California punished recidivist offenders by instituting penalties in the form of enhancements such as those under section 667.5. Even though Proposition 47 did not explicitly address the earlier intent of prior legislation to punish recidivist offenders, the information in the voter guide stated that the "measure reduces penalties for certain offenders convicted of nonserious and nonviolent property and drug crimes." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35.) This has been interpreted by the California Supreme Court to reduce all penalties, including those "that take[] the form of an enhancement or other recidivist-based punishment that was alleged with that same felony." (*Buycks*, *supra*, at p. 887.) *Buycks* held that a conviction reduced to a misdemeanor under Proposition 47 could not considered a felony under section 667.5(b), and we see no basis as to why the application of Proposition 47 should not likewise extend to the washout provision of section 667.5(b). Proposition 47 has the express purpose to reduce the penal consequences of certain crimes. It is not surprising that it directly conflicts with the intent of prior legislation that increased criminal punishment; that was its intended purpose. To the extent there is a conflict, such as here, the later enacted legislation controls.

## II.   Section 654

The court imposed a 16-month sentence for evading a pursuing peace officer consecutively with an 8-year sentence for transportation of methamphetamine. Kelly argues the trial court erred in imposing a concurrent sentence for his evading a pursuing peace officer conviction rather than staying the sentence under section 654, which bars multiple punishment for the same act or omission. (*People v. Corpening* (2016) 2 Cal.5th

16.

307, 311 (*Corpening*).) As Kelly contends, it was error for the trial court to impose a concurrent sentence if section 654 applies. (*People v. Jones* (2012) 54 Cal.4th 350, 353.) The proper procedure, if the statute applies, is to impose a sentence but stay its execution, despite little practical difference between a concurrent sentence and a stayed sentence. (*Ibid.*)

Kelly did not object to his sentence in the trial court, but because a sentence imposed in contravention of section 654 is an unauthorized sentence, the error may be raised on appeal even in the absence of an objection. (*People v. Brents* (2012) 53 Cal.4th 599, 618.) On appeal, "[a] trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld … if supported by substantial evidence" (*ibid.*), that is, evidence which is reasonable, credible, and of solid value (*People v. Armstrong* (2016) 1 Cal.5th 432, 450).

The statutory purpose underlying section 654 "is to ensure that a defendant's punishment will be commensurate with his culpability." (*People v. Correa* (2012) 54 Cal.4th 331, 341.) To that end, the statute prohibits courts from imposing multiple punishment for the same act or omission but, as the California Supreme Court recently observed, the application of section 654 can leave courts with more questions than answers. (*Corpening, supra*, 2 Cal.5th at p. 312.) This is because "[n]either the text nor structure of section 654 resolves when exactly a single act begins or ends, for example, or how to take account of the fact that virtually any given physical action may, in principle, be divided into multiple subsets that each fit the colloquial definition of an 'act.'" (*Ibid.*)

As the court explained in *Corpening*, determining "[w]hether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act.

17.

Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single "'intent and objective'" or multiple intents and objectives." (*Corpening, supra*, 2 Cal.5th at p. 311.)

Kelly contends that the actions forming the bases of the convictions for both charges comprised the single act of driving the car. According to Kelly, he was convicted of transportation of methamphetamine because the methamphetamine was found in his vehicle when he was apprehended. Therefore, he contends that the movement of the car was the same act that formed the basis of the transportation of methamphetamine charge as well as the evasion charge.

Respondent counters that the act of transporting occurred and was completed prior to the act of evading police. Respondent contends that Kelly's intents and objectives changed once the traffic stop commenced. Kelly had multiple objectives. However, before the traffic stop, respondent argues Kelly's primary objective was to transport the methamphetamine. Whereas, after the traffic stop, his main objective was to attempt to evade law enforcement to avoid arrest. We find respondent's argument persuasive.

When there is no "explicit ruling by the trial court at sentencing, we infer that the court made the finding appropriate to the sentence it imposed, i.e., either applying section 654 or not applying it." (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1045, citing *People v. Tarris* (2009) 180 Cal.App.4th 612, 626–627.) In the absence of any reference to section 654 during sentencing, the fact that the court did not stay the sentence is generally deemed to reflect an implicit determination that each crime had a separate objective. (*People v. Tarris*, *supra*, at p. 626.) Here, the trial court impliedly determined section 654 did not apply to Kelly's evasion sentence because it did not stay the sentence and we must affirm that determination if it is supported by substantial evidence. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368, disapproved on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3; accord, *People v. Mejia*, *supra*, at p. 1045.)

18.

We hold that Kelly's course of conduct involved multiple intents and objectives. Prior to encountering law enforcement, there was ample evidence that Kelly was transporting a significant amount of methamphetamine in his car. At that time, his intent was just that, an intent to transport methamphetamine for its eventual sale. Once sheriff's deputies attempted to conduct a traffic stop, Kelly's conduct and objective changed. His new objective was to evade the peace officers, and his driving behavior reflected that intent based on Kelly committing several traffic violations in his attempt to get away. Prior to the attempted stop, no evidence was introduced that Kelly was driving recklessly or violating traffic laws. There was a clear delineation in this case where, during Kelly's course of conduct, his intents and objectives changed, as manifested by his different behavior. Substantial evidence supports the trial court's implicit finding that the crimes were committed for different objectives and the court, therefore, did not err in ordering a consecutive sentence for the evasion conviction.

## III.    Review of In Camera Hearing

Prior to trial, Kelly moved for the disclosure of the identity and whereabouts of a confidential informant. During his arrest, a padlock key was found in Kelly's car. According to Kelly's motion, a sheriff's deputy stated in his report that he developed information that Kelly had a storage locker at a specific facility, and that the key found in the vehicle was for that storage facility. Kelly argued that there were no identifying marks on the key, so an informant likely had provided information leading law enforcement to the location of the storage locker. The court granted the motion and conducted an in camera hearing and reviewed the information obtained from the informant.

Upon hearing from the witness, the court denied the motion to disclose the witness's identity. The court noted that the confidential informant was not a percipient witness and could not provide exculpatory evidence.

Kelly asks us to independently review the sealed transcript of the in camera hearing to determine whether the court followed the procedures set forth in Evidence Code section 1042, subsection (d), and whether the court erred in relying on the fact that the informant was not a percipient witness.

## A.    Legal Principles

Evidence Code section 1040 grants a public entity a privilege to refuse disclosure of official information if the privilege is claimed by a person authorized by the public entity to do so and "[d]isclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice .…"  (*Id.*, subd. (b)(2); see *People v. Landry* (2016) 2 Cal.5th 52, 73.)  The statute defines "'official information'" as "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made."  (Evid. Code, § 1040, subd. (a).)

In reviewing a claim of privilege under Evidence Code section 1040, the court may conduct an in camera hearing outside the presence of the defendant and his counsel. (Evid. Code, § 1042, subd. (d); see *People v. Bradley* (2017) 7 Cal.App.5th 607, 620–621 (*Bradley*).)  At that hearing, the prosecution may offer evidence that discloses the confidential information to aid the court in determining materiality:  that is, "'whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial.'"  (*Bradley*, *supra*, at p. 621.)  "If the court sets an ex parte in camera hearing following a proper assertion of privilege by the People, and a finding of need by the court, petitioner should be given an opportunity to propose questions to be asked at the in camera hearing."  (*Torres v. Superior Court* (2000) 80 Cal.App.4th 867, 874.)

If the court makes the determination that the privilege applies, the defendant then has an opportunity to establish that the privilege is outweighed by the necessity to disclose "material" evidence.  (Evid. Code. § 1042, subd. (a).)

20.

"A trial court has discretion to deny disclosure not only when the necessity for confidentiality outweighs the necessity for disclosure, but also 'when there is an "'absence of a showing which specifies the material sought and furnishes a "plausible justification" for inspection [citations].'"'" (*People v. Suff* (2014) 58 Cal.4th 1013, 1059.) The determination of the materiality of the information for purposes of Evidence Code section 1040 is reviewed for abuse of discretion. (*People v. Suff*, *supra*, at p. 1059.)

### B. Analysis

We have independently examined the reporter's transcript of the trial court's in camera hearing, and find the record is adequate for meaningful appellate review. We conclude the trial court did not abuse its discretion in ruling on the claim of privilege as to the identity of the confidential informant (*People v. Suff*, *supra*, 58 Cal.4th at p. 1059), and discern nothing in the conduct of the proceedings that warrants reversal.

First, we find no procedural error. The witness at the in camera hearing testified under oath, and provided sufficient testimony to determine whether the evidence at issue was material. The confidential informant overheard communications that Kelly had a grenade, pistol and shotgun in the storage unit. However, the informant had never been to the storage facility and had no personal knowledge of the contents of the unit. We find that the court did not abuse its discretion in finding the identification of the informant to not be material. The information provided by the informant only served to allow law enforcement to be aware to search the storage facility. While the information was used by law enforcement to conduct the investigation, the informant's testimony could not be used by Kelly to refute the charges he faced. At trial, the manager of the storage facility identified Kelly and explained that he came in to rent a storage unit with another male. Kelly did not have identification required to rent the unit, so the other individual filled out the application for the storage unit in his name, but Kelly paid the balance due. The manager observed the men moving things into the unit immediately after signing the

rental agreement.  Another supervisor at the storage facility saw Kelly's car at the storage unit approximately one-half hour before Kelly was arrested.

The confidential informant had secondhand knowledge that Kelly had prohibited items in a storage unit.  Based on that information, the officers conducted further investigation, including interviewing the employees of the storage facility, who testified at trial and indicated that Kelly had placed his belongings in the unit.  Kelly would not have received any benefit from the disclosure of the identity of the confidential informant, as the evidence used to support the prosecution's claim that the items found in the unit were his was based on separate evidence.  We conclude that the court did not abuse its discretion in finding that the privilege was outweighed by the necessity to disclose material evidence.  (Evid. Code, § 1042, subd. (a).)

### DISPOSITION

The judgment is modified to strike prior conviction 7 of the 8 one-year prior prison term enhancements.  The trial court is directed to forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

_____
MEEHAN, J.

WE CONCUR:


_____
HILL, P.J.


_____
POOCHIGIAN, J.

22.