Filed 4/16/26  P. v. Garvey CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>HENRY MATTHEW GARVEY,<br><br>        Defendant and Appellant. | D084847<br><br><br>(Super. Ct. No. SCD300373) |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Reversed in part and remanded with instructions.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathrynn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Henry Matthew Garvey of assault with a deadly weapon (Pen. Code § 245, subd. (c)[1]—count 1); evading an officer with reckless driving (Veh. Code § 2800.2, subd. (a)—count 2); resisting an officer (§ 69—count 3); hit and run driving (Veh. Code § 20002, subd. (a)— count 4);

---

[1]      Further unspecified statutory references are to the Penal Code.

and driving under the influence (Veh. Code § 23152, subd. (a)— count 5). The trial court sentenced him to a total term of four years eight months in prison, stayed pending successful completion of three years of probation. Garvey asserts he cannot be punished on both counts 1 and 2, pursuant to section 654, and that the judgment should be reversed because the trial court erroneously denied his objection to the prosecutor's peremptory challenge of a juror, in violation of Civil Procedure section 231.7. We conclude there was insufficient evidence to support a finding that the two crimes in counts 1 and 2 had separate objectives and remand the matter to the trial court with instructions to exercise its discretion under section 654 to stay the sentence on either count 1 or 2. We conclude further that the trial court properly sustained the peremptory challenge and affirm the judgment in all other respects.

## I.  FACTUAL AND PROCEDURAL HISTORY

San Diego Police Officer Andrew Ozeroff was patrolling the area of Little Italy in San Diego at approximately 9:30 p.m. on August 23, 2023, when he observed a vehicle come close to a group of cyclists and pedestrians. It appeared there was an argument occurring. Officer Ozeroff was driving a marked squad car and maneuvered it closer to the vehicle to contact the driver, later determined to be Garvey. As Officer Ozeroff approached, the vehicle accelerated at a rapid pace.

Officer Ozeroff followed the vehicle, trying to catch up so that he could initiate a traffic stop. As he got closer, Officer Ozeroff turned on his overhead lights to signal to Garvey to pull over, but Garvey did not yield. Instead, Garvey decelerated rapidly in the middle of the intersection, a maneuver that Officer Ozeroff referred to as a "brake check." This caused Officer Ozeroff's vehicle to collide with the rear end of Garvey's vehicle. Garvey accelerated

2

again and the chase continued. Officer Ozeroff informed dispatch of the situation, activated his siren, and continued to follow the vehicle. Garvey ran through stop signs, traveled the wrong way down a one-way street, and brake checked Officer Ozeroff several more times over the next few minutes. Officer Ozeroff was able to avoid further contact, as he anticipated the additional brake checks.

Garvey eventually stopped the vehicle, apparently because a bystander—later determined to be Jonah Carbajal, one of the individuals on an e-bike in the crowd at the beginning of the incident—stood in front of it, but when another police officer approached, Garvey refused to get out of his vehicle. Ozeroff and the other officer had to forcibly remove Garvey, and Garvey actively resisted, kicking and pulling against the officers' force. After removing Garvey from the vehicle, the officers determined that he was under the influence of alcohol. Garvey was rambling and making profane and vulgar statements throughout the ordeal. Officer Ozeroff was wearing a body worn camera, and the prosecution played a video of the chase for the jury at trial.

A phlebotomist drew blood from Garvey's arm around 1:00 a.m. on August 24, 2023. A criminalist from the forensic chemistry unit tested the blood sample and testified that the blood alcohol level (BAC) was 0.083 plus or minus .004 percent. She discussed principles of absorption and indicated that Garvey's BAC was likely higher at the time of the incident.

Garvey testified in his own defense at trial. He was in Little Italy on the evening of August 23 to get some dinner. Garvey recalled that one of the individuals in the crowd, subsequently identified as Carbajal, was approaching his vehicle on an electric bike and yelling at him. This frightened Garvey. Garvey did not recall seeing a police officer, or a patrol

3

car, until after he was "bumped from behind going through that signal." Garvey had stopped, or braked, in the intersection because he was concentrating on Carbajal, who seemed to be chasing him. Garvey felt "very nervous."

Garvey testified that he had been diagnosed with bipolar disorder in 2012. He was on medication but had not taken it yet that day because he had not eaten. Before the collision, he was experiencing symptoms including "panic, paranoia, uncertainty, [and] fear." After the collision, Garvey "felt unsafe." He was shaking, but kept going, and said to himself, "I'm not going to pull over right here. I don't feel safe enough. I don't feel stable enough to even pull over right now." He acknowledged stopping, or brake checking, several times and said that he was looking for his phone or his glasses and that he continued feel "paranoid" and "strange."

Garvey said that he was injured when the officers pulled him out of the car, that he had been injured by police in the past, and that the pain, along with his "extreme panic and paranoia" played a role in his reaction. He denied drinking, but said that he did drink a kombucha earlier in the day that might have had alcohol in it.

The jury found Garvey guilty on all five asserted counts. The trial court sentenced him to a total term of four years eight months, including the middle term of four years for assault with a deadly weapon on count 1, and one-third the middle term for an additional eight months, to run consecutive for evading an officer, on count 2. However, the trial court acknowledged that Garvey had some mental health issues, stayed the prison term, and placed him on probation for three years "under fairly tight conditions."

Garvey filed a timely notice of appeal.

4

## II.    DISCUSSION

Garvey raises two assertions on appeal:  First, he argues that the sentence on either count 1 or 2 must be stayed under section 654, because the assault and evasion were part of an indivisible course of conduct.  Second, he asserts the trial court erroneously denied defense counsel's peremptory challenge to a prospective juror based on Civil Procedure section 231.7.

### A.    Section 654 Precludes Punishment on Counts 1 and 2

Section 654, subdivision (a) provides, in relevant part "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

A defendant may be charged with—and in some cases convicted of—multiple crimes arising out of the same conduct but cannot receive multiple punishments for the same act or omission.  (§§ 654, 954; *People v. Reed* (2006) 38 Cal.4th 1224, 1226−1227 (*Reed*).)  "When section 954 permits multiple conviction[s], but section 654 prohibits multiple punishment[s], the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited."  (*Id.* at p. 1227.)

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)  If we conclude "that the case involves more than a single act—i.e., a course of conduct . . . we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives."  (*Ibid.*)

"The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless

5

unsupported by the evidence presented at trial." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) " 'We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence.' " (*People v. Vang* (2010) 184 Cal.App.4th 912, 916.)

Because the trial court sentenced Garvey on both counts 1 and 2, we presume the trial court made an implied finding that section 654 did not apply, and that the two crimes had separate objectives.[2] (See *People v. Kelly* (2018) 28 Cal.App.5th 886, 904 ["When there is no 'explicit ruling by the trial court at sentencing, we infer that the court made the finding appropriate to the sentence it imposed.' "].) For the reasons we will explain, we conclude that implied finding is not supported by substantial evidence.

The prosecutor argued that the various brake checks that occurred through the pursuit constituted assault with a deadly weapon on an officer, sufficient to convict Garvey on count 1. There is no dispute that each of the brake checks occurred during the pursuit, and that Garvey was behaving erratically the entire time. Officer Ozeroff testified that "several times when there was a brake check," Garvey brought his vehicle to a complete stop. The stops lasted long enough that Officer Ozeroff put his own vehicle into park, believing that the pursuit had ended, only to have Garvey accelerate once again. Officer Ozeroff testified further, "When it continued, I was cognizant that this is an evasion tactic. This was intentional." This testimony at least suggests that the brake checks were incidental to Garvey's evasion of the

---

[2] Garvey relies on California Rules of Court, rule 4.424 to assert that the trial court had to make a finding pursuant to section 654 before imposing a sentence on count 2. Garvey provides no authority, nor are we aware of any, supporting this position. Regardless, the issue is rendered moot by our conclusion that substantial evidence does not support any such finding.

officer. And there was no evidence that Garvey had some different objective, or an actual intent to cause harm to the officer or the patrol car.

To the contrary, Officer Ozeroff testified that Garvey "appeared confused" when the police tried to extract him from his vehicle. Another officer testified that Garvey seemed intoxicated but also that he was erratic and some of his behavior might possibly be due to mental health. And, although the jury was not required to accept his version of the events, Garvey testified that he did not recall seeing the officer before he got "bumped from behind," that he was initially fleeing from Carbajal, and that he subsequently felt "paranoid," "unsafe," and "strange once he realized the police were also pursuing him. He acknowledged the intermittent brake checking, but indicated it was not intentional and was, instead, part of his reaction to the entire situation. The trial court seemed to credit at least some of Garvey's statements, indicating "clearly there is some mental health issues at play here," before ultimately staying the sentence and placing Garvey on probation.

Garvey argues that *In re L.J.* (2021) 72 Cal.App.5th 37 is instructive. There, the minor, L.J., was likewise charged with assault during an extended flight from the police, and the court concluded, "The evidence does not support a finding that the minor's assaults on the officers were based on different intents and objectives than the minor's overall purpose of trying to evade the police officers." (*Id*. at p. 44.) The court explained that the totality of circumstances—the minor driving towards the police at a relatively slow speed and before attempting to "slalome[ ]" between them, causing some incidental damage—indicated the minor was trying to get past the police, as part of the evasion, "rather than targeting them." (*Ibid*.) The same is true here. Although Garvey was driving away from, and not slaloming through

7

the police cars, the evidence suggests the brake checking was, as Officer Ozeroff described it, an evasion tactic, albeit a seemingly erratic one, and thus incidental to Garvey's singular intent and objective. (Cf. *People v. Jimenez* (2019) 32 Cal.App.5th 409, 426 [defendant had a different intent and objection when driving "head on" towards an officer].)

The People assert that Garvey had time to reflect after committing the first and before committing the subsequent brake checks. We disagree. The record indicates the chase lasted no more than about 10 minutes, and that Garvey was acting erratically throughout. Moreover, Garvey testified that he did not notice the police car until it bumped *him* from behind, suggesting that he did not attribute the collision to his own conduct. Rather, there was ample evidence Garvey was nervous, paranoid, and not in a state of mind to be able to reflect on his actions.

In sum, we conclude there was insufficient evidence to support a finding that the two crimes in counts 1 and 2 had separate objectives. Because section 654 permits the court to stay the punishment as to either count, we must remand the matter to the trial court to allow it to exercise that discretion. We acknowledge that the trial court did stay both sentences pending Garvey's successful completion of probation but, nonetheless, the abstract of judgment should reflect a further stay based on section 654, in the event that Garvey is not successful on probation.

## B.    The Trial Court Properly Denied the Peremptory Challenge

Garvey next asserts that the judgment must be reversed and the matter remanded for a new trial because the trial court violated his statutory rights under Code of Civil Procedure section 231.7 by failing to sustain his objection to the prosecutor's peremptory challenge against Prospective Juror No. 21 (Juror No. 21). Before turning to the details of the peremptory challenge, we provide an overview of Code of Civil Procedure section 231.7, a

provision of the Racial Justice Act (the RJA) that became effective on January 1, 2021.

### 1. Code of Civil Procedure section 231.7

At its core, Code of Civil Procedure section 231.7 precludes either party from using "a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (Civ. Proc. § 231.7, subd. (a).) If a party attempts to use a peremptory challenge in a prohibited manner, the other party or the trial court "may object to the improper use of a peremptory challenge." (*Id*., subd. (b).) "[U]pon objection to the exercise of a peremptory challenge pursuant to this section, the party exercising the peremptory challenge shall state the reasons the peremptory challenge has been exercised." (*Id*., subd. (c).)

Once the objection is made, the trial court "shall evaluate the reasons given to justify the peremptory challenge in light of the totality of the circumstances. The court shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge. If the court determines there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, as a factor in the use of the peremptory challenge, then the objection shall be sustained. The court need not find purposeful discrimination to sustain the objection. The court shall explain the reasons for its ruling on the record." (Civ. Proc.§ 231.7, subd. (d)(1).)

In making its determination, the trial court can consider, but is not limited to, several enumerated factors. (Civ. Proc. § 231.7, subd. (d)(3)(A)–

9

(G).)  The statute acknowledges "that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in the State of California."  (*Id.*, subd. (d)(2)(A).)  It defines " 'unconscious bias' " to include both "implicit and institutional biases."  (*Id.*, subd. (d)(2)(C).)

Accordingly, the statute provides further that a "peremptory challenge for any of [certain enumerated] reasons is presumed to be invalid unless the party exercising the peremptory challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case."  (Civ. Proc. § 231.7, subd. (e).)  The enumerated reasons include, among others: "(1) Expressing a distrust of or having a negative experience with law enforcement or the criminal legal system."  (*Id.*, subd. (e)(1)–(10).)

"The term 'clear and convincing' refers to the degree of certainty the factfinder must have in determining whether the reasons given for the exercise of a peremptory challenge are unrelated to the prospective juror's cognizable group membership, bearing in mind conscious and unconscious bias.  To determine that a presumption of invalidity has been overcome, the factfinder shall determine that it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case."  (Civ. Proc. § 231.7, subd. (f).)

In addition, the statute provides a list of "reasons for peremptory challenges [that] have historically been associated with improper

10

discrimination." (Civ. Proc. § 231.7, subd. (g)(1).) This includes the juror failing to make eye contact or "exhibit[ing] either a lack of rapport or problematic attitude, body language, or demeanor." (*Id.*, subd. (g)(1)(A), (B).)

Finally, the statute provides: "The denial of an objection made under this section shall be reviewed by the appellate court de novo, with the trial court's express factual findings reviewed for substantial evidence. The appellate court shall not impute to the trial court any findings, including findings of a prospective juror's demeanor, that the trial court did not expressly state on the record. The reviewing court shall consider only reasons actually given under subdivision (c) and shall not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror, regardless of whether the moving party made a comparative analysis argument in the trial court. Should the appellate court determine that the objection was erroneously denied, that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (Civ. Proc. § 231.7, subd. (j).)

### 2. The Trial Court Properly Denied Defense Counsel's Objection Pursuant to Code of Civil Procedure Section 231.7

During voir dire, Prospective Juror No. 21 disclosed that he had been arrested in 2000, and that the contact with law enforcement was "abrasive." Juror No. 21 explained that believed he was being cooperative, that the first officer he interacted with treated him appropriately, but the second officer treated him as if he was not listening and it "did not sit well" with him. Counsel asked if the memory still brought up a lot of emotions, and Juror No. 21 said, "It still sits back there. Once in a while it's something that I won't—I

11

don't look back on it too much." Juror No. 21 said that he believed he could set the memory aside and judge the present case fairly and impartially.

Juror No. 21 also disclosed that he had a family member whom he was very close to who experienced mental health issues. He continued to have strong emotions of sadness "and how things kind of went with her."

Later, the prosecutor returned to the subject of the Juror No. 21's negative interactions with law enforcement and asked, "Do you think that's something that you would be able to set aside and hear the evidence in this case completely separate from those emotions?" Juror No. 21 replied, "I would have to hear and go from there. Counsel asked if his experience would "come into play when you were making a decision in this case," and Juror No. 21 said, "A little bit. I think it would. A little bit, yeah." Both counsel agreed that Juror No. 21 was being "wishy washy," and the trial court stated it would follow up with him again. The trial court asked, "In this matter can you be fair and impartial to both sides," and Juror No. 21 said, "I believe so as well."

The prosecutor used a peremptory challenge against Juror No. 21 and defense counsel objected under Code of Civil Procedure section 231.7. The trial court proceeded to sidebar with counsel, and a discussion was held in which the court determined that Juror No. 21 was likely Asian, perhaps Filipino, but that his race had not been definitively identified. The prosecutor explained that "this juror when he was questioned regarding his feelings particularly against police officers, he did say that he was biased against police officers specifically the way that he phrased it at the end. He said, yes, this is my experience and it would sit at back of my mind when coming to my decision. In this case he also did express strong feelings about

12

mental health issues, and how that would also affect his ability to sit on the case." The trial court then clarified that the defendant "is a white male."

The trial court stated, regarding Juror No. 21: "He was a tough call for cause before. I did go back and ask him if he could be fair and reasonable, which is always the bottom line, but there was certainly some underlying factors a little bit on the mental health issues but also on the idea of whether he could be fair and impartial to both sides, which, of course, that is the whole purpose of voir dire is to pick people who can be fair and impartial to both sides. I will make a finding this is not about race or any ethnic group. I think it would be very unfair to the prosecutor to make that finding because this is not about race or ethnic group. She is treating him as if he were anybody else and just not the best juror for her on this particular case, which is what voir dire is all about."

Defense counsel asserted that one of the stated reasons, a negative experience with an officer was presumptively invalid under Code of Civil Procedure section 231.7.[3] In response, the trial court reiterated that its finding was based on the indications that Juror No. 21 could not be fair and impartial, and that the court was not willing to make a finding that the prosecutor was exercising the objection for racial reasons, including implicit bias.

We find no error in the trial court's ruling. Juror No. 21 expressed uncertainty as to his ability to set aside his prior negative experiences to judge the present case fairly and impartially. The trial court considered the fact that negative experiences with law enforcement raise a presumption of

---

[3] The transcript indicates counsel referenced "section 231.15 (a)(1) and (2)" but we presume counsel either intended to reference section 231.7, subdivision (e)(1) and (2) or that there may have been a transcription error.

13

invalidity under Code of Civil Procedure section 231.7 and the concept of implicit bias, but made a finding that, here, the peremptory challenge was not based on race and was, instead, based on Juror No. 21's stated uncertainty as to his ability to be fair and impartial. Substantial evidence supports the trial court's finding. Juror No. 21 stated that he had lingering emotions about his experience after being arrested *and* about a close family member who suffered from mental health issues. He stated that he was not sure if he could completely separate his emotions from the present case and counsel agreed that his responses were inconsistent at a minimum.

As the court explained in *People v. Gonzalez* (2024) 104 Cal.App.5th 1, "While a prospective juror's negative experience with law enforcement may be inextricably related to that juror's race, the focus of [Code of Civil Procedure] section 231.7 is on race as a factor in the use of the peremptory challenge. In view of his multiple uncertain and noncommittal responses regarding impartiality, the trial court properly found it highly probable the prosecutor's challenge was unrelated to conscious or unconscious bias and was instead specific to [the prospective juror] and bore on his ability to be fair and impartial. In other words, the clear and convincing standard was satisfied." (*Gonzalez,* at pp. 17–18.) For the reasons we have explained, we conclude that the same is true here.

## III.    DISPOSITION

The matter is remanded to the trial court with instructions to exercise its discretion to stay the sentence on either count 1 or 2 pursuant to section 654.  The judgment is otherwise affirmed.


KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


RUBIN, J.