Filed 4/3/24  P. v. Tangonan CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097610 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE006948) |
| v. | |
| BEMIL TANGONAN, | |
| Defendant and Appellant. | |

After a jury found defendant Bemil Tangonan guilty of rape by force and assault with a semiautomatic firearm, the trial court sentenced him to 19 years six months, plus 15 years to life imprisonment.  Defendant argues the trial court erred in sentencing him to the upper term for the assault and for not staying that sentence under Penal Code section 654.  (Undesignated statutory references are to the Penal Code.)  Finding no merit to these contentions, we affirm.  But we direct the trial court to amend the abstracts of judgment by striking several fines and fees not imposed and correcting the case number listed.  We further direct the trial court to amend the September 2, 2022, minute order to accurately reflect the jury's finding as to an aggravating circumstance.

1

## FACTUAL AND PROCEDURAL BACKGROUND

From 2018 to 2020, defendant was a regular client of Doe, who was a sex worker. On April 26, 2020, defendant arrived at Doe's motel room and handed her $400 cash. After watching television together, defendant asked Doe if she was ready to have sex; Doe said she was going to take a bath first. A friend called Doe while she was in the bathtub asking Doe to give her a ride. Defendant agreed to give Doe's friend a ride and left to do so.

Doe finished her bath, lied down, and fell asleep watching television. She was awakened by the sound of glass breaking. Defendant emerged from the bathroom and pointed a gun at Doe's face with his finger on the trigger. Doe thought defendant was going to kill her. Defendant asked why she was playing with him and where was the money he paid her. After Doe gave defendant the money, defendant directed Doe to move from the bed to the chair. He kept saying "why are you playing with me" and told her that she owed him. He then ordered Doe to move back to the bed and lie on her stomach. Defendant unzipped his pants and proceeded to rape her vaginally while pointing the gun at the back of her head. Doe could feel the gun against her head; she cried and screamed at defendant not to kill her. The gun went off during the rape and Doe felt a burning sensation down her back and heard a ringing in her ear. Doe later noticed that her left ear had been hit by the bullet. Defendant left after he ejaculated. That same day, defendant texted Doe saying, "Karma is a bitches. Be careful. Most bitch die early." During the subsequent police investigation, investigators found "an over-the-counter sex stamina pill" container in defendant's van with one empty slot.

A jury found defendant guilty of rape by force and assault with a semiautomatic firearm. The jury also found defendant not guilty of robbery but guilty of the lesser included offense of petty theft. As to the rape, the jury found it true that defendant personally used a firearm during the commission of the offense but not true that defendant intentionally discharged a firearm. As to the assault, the jury found it true that defendant used a firearm but not true that defendant intentionally discharged a firearm. In a bifurcated

2

proceeding, the jury found true the allegation that in the commission of the offenses, defendant "used great violence, the threat of great bodily harm or acted in a manner indicating a high degree of cruelty, viciousness or callousness." (Cal. Rules of Court, rule 4.421(a)(1).) But the jury found it not true that defendant "engaged in violent conduct which indicates that he represents a serious danger to society" and that, in committing the offenses, defendant "used planning, sophistication, or professionalism." (Cal. Rules of Court, rules 4.421(a)(8) and 4.421(b)(1).)

The trial court sentenced defendant to 15 years to life for the rape, nine years (the upper term) for the assault, 10 years (the upper term) for the firearm use enhancement associated with the assault, and six months for the theft. In imposing the upper term for the assault, the court explained:

"[T]he Court finds in mitigation no criminal history. The Court finds in aggravation, the viciousness and the cruelty of all this. . . . [¶] The callousness and really the cruelty, the viciousness, the callousness, was a very, very high degree. In this case they had a relationship. Really it was a business relationship. She was a [sex worker]. He was a customer. That day or night things didn't go the way he wanted. He had left some money for her. Has events with friends and had to go pick them up. And then the defendant was simply angry.

"Really my view of it, it was a [vicious] vengeance rape. And he came and he went to the back alley, he climbed through the window, came in through the bathroom and had a gun on her immediately. And she was ordered around, he raped her and then -- and he had the gun -- I don't know how this happened but it discharged. The jury found it wasn't intentional. But that gun was so close to her head that the bullet took out a piece of her ear and the detective, whoever testified, said it was the heat of the bullet going by that left all the burn marks on her skull.

"I don't think it was -- it's not the heat but the velocity of the bullet. That's the spray. That's what we would otherwise call gunshot residue or stripping, and that's how

3

close that was. You can imagine, you're in the process of being raped and you're lying there watching yourself being raped in the reflection of the refrigerator, and then that gun goes off.

"I don't know if you handle guns. I've shot plenty of them, and man, you take a nine -- this was a nine-millimeter -- that thing goes off, and you don't have ear protection, and that's right next to your ear and on your head, just the sound of that would drop you, and the percussion of it would drop you that close. And as [the prosecutor] points out, he doesn't stop. Even that, even a gun shot that takes out a chunk of her ear, he doesn't stop. He continues to rape her to completion. You can hardly find a more callous or [vicious] act than that. And even though there's no criminal record, the near insanity of this, the 'totally I lost my mind and I'm going to victimize her more because I'm mad about how things went that day,' is to the level of almost incomprehension. It's to the level that shouldn't have existed.

"I am going to go upper term on the underlying sentence because of that, and go upper term on the use of the firearm because it wasn't just a firearm. It wasn't just do what I tell you to do and nobody gets hurt, this is a firearm to the back of her head and actually discharges, and burns her skull and permanently deforms her ear physically, and permanently deforms her psychologically for the rest of her life. She too has [a] life sentence."

The trial court imposed no fines or fees in its oral pronouncement. But the indeterminate abstract of judgment lists the following fines and fees: (1) a $600 restitution fine; (2) a $600 parole revocation fine; (3) a $120 court security fee; and (4) a $90 criminal conviction assessment.

Defendant timely appealed.

4

DISCUSSION

I

*Multiple Punishments*

Defendant argues the trial court was required to stay his sentence for the assault because both the rape and the assault were based on the same act during which defendant harbored a single objective. We disagree.

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." " 'The proscription against double punishment in section 654 is applicable where there is a course of conduct which . . . comprises an indivisible transaction punishable under more than one statute . . . . The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162; see also *People v. Corpening* (2016) 2 Cal.5th 307, 311 [explaining that where the case involves a single course of conduct, the reviewing court must "consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives"].) To permit multiple punishments, "there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced." (*Coleman*, at p. 162; see also *People v. Kelly* (2018) 28 Cal.App.5th 886, 903, as modified (Nov. 26, 2018) [applying substantial evidence standard to determination that crimes involved separate objectives].) Where the trial court does not stay a sentence pursuant to section 654 and offers no factual basis for its decision, we presume the court found that the defendant harbored a separate intent and objective for each offense. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1147.)

Defendant contends that this incident reflects an indivisible course of conduct for the sole objective of raping Doe. But substantial evidence demonstrates that defendant

5

separately intended to assault Doe as retribution for locking him out. The first thing defendant did when entering the motel bedroom was point a gun at Doe's face, causing her to believe that defendant intended to kill her. He accused Doe of playing with him and ordered her to move from the bed to the chair during the assault. This physical movement away from the bed where the rape occurred belies defendant's assertion that his sole objective during this encounter was to rape Doe. Defendant's text to Doe telling her that "Karma is a bitches. Be careful. Most bitch die early" further supports the inference that defendant separately intended the assault.

Defendant submits that because the text was sent after the incident, it "was an attempt to gloat or scare [Doe] from reporting the incident; it does not support an inference of discrete criminal objectives for the assault." No evidence in the record indicates that the text was sent *after* the rape. Defendant cites to the prosecutor's closing statement in support of this proposition but statements of counsel are not evidence. (See *People v. Wallace* (2004) 33 Cal.4th 738, 754, fn. 3.) But even assuming the message was sent after, it still supports the inference that he intended to harm Doe beyond the harm inherent in raping her. (Cf. *People v. Pitts* (1990) 223 Cal.App.3d 606, 892-893 [explaining that conduct after the crime may support an inference of criminal intent].)

Because substantial evidence supports the conclusion that defendant harbored multiple objectives, the trial court did not err in imposing a sentence for the assault conviction.

## II

### *Upper Term for the Assault Conviction*

Defendant next contends that the trial court erred by imposing the upper term for the assault. More specifically, defendant argues: (1) the sentence is unauthorized for failure to comply with section 1170, subdivision (b)(2); (2) application of the aggravating circumstance violated the prohibition against dual use of facts; and (3) even if the

aggravating circumstance could be applied, the trial court abused its discretion in selecting the upper term.

As relevant to defendant's first argument, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

Defendant claims the trial court's sentence is unauthorized because the court relied solely on "the fact that the crime was committed with a high degree of cruelty, viciousness or callousness" in selecting the upper term but "the jury finding does not necessarily reflect that [the jury] found this factor true." According to defendant, because the aggravating circumstance is worded in the disjunctive — that defendant "used great violence, the threat of great bodily harm, *or* acted in a manner indicating a high degree of cruelty, viciousness or callousness" — the jurors could have found this aggravator true without concluding that defendant acted in a callous or vicious manner. Defendant separately contends there is no evidence concerning numerous points discussed by the trial court, such as the sound of a gun going off next to a person's head or that Doe was scarred physically and psychologically.

This claim is forfeited by defendant's failure to raise it below. (*People v. Scott* (1994) 9 Cal.4th 331, 353.) Defendant argues that this claim cannot be forfeited because "unauthorized sentences are not subject to forfeiture." We disagree with defendant's characterization that his sentence is unauthorized, as it is supported by an aggravating circumstance properly found by the jury in accordance with section 1170, subdivision (b)(2). (See *Scott*, at p. 354 ["[A] sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case"].)

7

We also reject defendant's strained reading of the trial court's sentencing decision. Understood in context, the court's reference to defendant's viciousness and callousness was intended to identify the jury's aggravating circumstance finding—not to suggest that defendant's callousness and viciousness was the sole basis for the jury's finding. The court then properly explained, based on the details of the case, why that aggravating circumstance weighed heavily in the court's sentencing decision. And contrary to defendant's claim, there was evidence supporting the points discussed by the court, such as Doe's testimony that she heard a "really loud . . . buzzing noise" when the gun went off, that part of her ear was missing after the gunshot, and that she was "traumatized."

Defendant's dual use argument has similarly been forfeited by the failure to object below. Anticipating forfeiture on this point, defendant argues his trial counsel provided ineffective assistance by not raising it at the sentencing hearing.

To establish a claim for ineffective assistance of counsel, defendant must show his counsel's performance was deficient and that he suffered prejudice as a result. (*People v. Mickel* (2016) 2 Cal.5th 181, 198; *Strickland v. Washington* (1984) 466 U.S. 668, 687-692.) We presume that "counsel's actions fall within the broad range of reasonableness, and [we] afford 'great deference to counsel's tactical decisions.' " (*Mickel*, at p. 198.) As our Supreme Court has observed, "certain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding." (*Ibid.*) This is because "[t]he record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Ibid.*) We will reverse only if there is affirmative evidence that counsel had no rational tactical purpose for an act or omission. (*Ibid.*) If the record on appeal sheds no light on why trial counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an

explanation and failed to provide one or there could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) A defendant thus bears a difficult burden when asserting an ineffective assistance claim on direct appeal. (*Mickel*, at p. 198.)

A court "generally cannot use a single fact both to aggravate the base term and to impose an enhancement, nor may it use a fact constituting an element of the offense either to aggravate or to enhance a sentence." (*People v. Scott*, *supra*, 9 Cal.4th at p. 350; see also § 1170, subd. (b)(5).) Relying again on the circumstance's disjunctive wording, defendant submits that the jury could have found the aggravating circumstance true "under any of the three facts listed," specifically " 'great violence,' " " 'threat of great bodily harm,' " or " 'acted in a manner indicating a high degree of cruelty, viciousness or callousness.' " But, in defendant's view, the first two facts could be "established only by virtue of the firearm use and therefore cannot be used to support the upper term."

We conclude there was no deficient performance for the failure to object. Even if we accepted defendant's premise, we disagree that the only fact that could support a finding of "great violence" or "threat of great bodily harm" was the firearm use. Defendant's threatening text message sent on the same day of the assault readily supports these findings.[1] Defendant urges us not to consider the text message because it was not "reasonably related to the crimes." The message is patently related to the offenses, as defendant admits by explaining that it "was an attempt to gloat or scare her from reporting the incident." Defendant also argues we cannot consider the text message because "the jury made no finding related to the text." This argument confuses the issue. The point is that the trial court could apply the aggravating circumstance, properly found by the jury, to impose the upper term because the jury's finding was not necessarily based on defendant's firearm use. Accordingly, defendant's claim of ineffective assistance of counsel fails. (See *People*

---

[1] The trial court instructed the jury that a finding of great violence "requires only violence, not actual bodily harm."

9

*v. Lucero* (2000) 23 Cal.4th 692, 732 [" 'Counsel may not be deemed incompetent for failure to make meritless objections' "].)

Finally, defendant argues that the trial court abused its discretion in selecting the upper term. The trial court has broad discretion in its sentencing decisions. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) We must affirm the lower court's sentencing decision "unless there is a clear showing the sentence choice was arbitrary or irrational." (*People v. Lamb* (1988) 206 Cal.App.3d 397, 401.) " '[U]nless the record affirmatively indicates otherwise, the trial court is deemed to have considered all relevant criteria, including any mitigating factors.' " (*People v. King* (2010) 183 Cal.App.4th 1281, 1322.)

There was no abuse of discretion here. The court considered the aggravating circumstance properly found by the jury and explained why that circumstance weighed heavily in its decision. The court acknowledged that defendant had no prior criminal record but ultimately concluded that the upper term was nonetheless still appropriate. There is nothing arbitrary or irrational in that decision. Defendant insists that the court's determination was unreasonable because his "actions were less sinister than the court described" as he had been "provoked" by his belief that Doe "had used and then discarded him." We are not persuaded.

### III

#### *Fines and Fees*

The parties agree that the clerk lacked the authority to add fines and fees to the indeterminate abstract of judgment not imposed by the trial court in its oral pronouncement. They are correct—generally, only the oral pronouncement constitutes the judgment, and any divergence in the minutes or abstract of judgment is presumed clerical error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Defendant requests that the fines and fees be stricken. The People request remand on the issue, though they acknowledge that the lack of objection below may be deemed as a waiver. (See *People v. Tillman* (2000) 22 Cal.4th 300, 303.)

We exercise our inherent power to order correction of the abstract of judgment by striking the assessments. (*Mitchell*, at p. 185.)

IV

*Clerical Errors in Minute Order and Abstract of Judgment*

The parties also agree, as do we, that two clerical errors in the record warrant correction by the trial court. First, the trial court's September 2, 2022, minute order incorrectly states that the jury found it *true* that defendant engaged in violent conduct indicating that he represented a serious danger to society. Second, the case number in the determinate abstract of judgment is incorrectly listed as 20FE00698. On remand, the trial court should amend the minute order to accurately reflect the jury's verdict and correct the case number on the determinate abstract of judgment. (See *People v. Zackery* (2007) 147 Cal.App.4th 380, 385-386.)

DISPOSITION

The judgment is affirmed. The trial court shall prepare: (1) a corrected indeterminate abstract of judgment omitting the restitution fine (§ 1202.4, subd. (b)), parole revocation fine (§ 1202.45), court security fee (§ 1465.8), and criminal conviction assessment (Gov. Code, § 70373); (2) an amended determinate abstract of judgment with the correct case number; and (3) an amended September 2, 2022, minute order that accurately reflects the jury's not true finding that defendant engaged in violent conduct indicating that he represented a serious danger to society. The corrected abstracts of judgment shall be forwarded to the Department of Corrections and Rehabilitation.

                                                    /s/
                                                    Mesiwala, J.

We concur:

  /s/
Earl, P. J.

  /s/
Robie, J.

11